[Civil No. 1080.  Filed March 20, 1909.]

[100 Pac. 820.]

## ELMER H. DUFFIELD, Petitioner, v. HENRY F. ASH-URST, as District Attorney of Coconino County, Arizona Territory, Respondent.

1. MANDAMUS—GROUNDS—REFUSAL TO INSTITUTE QUO WARRANTO PRO-CEEDINGS.—Under Civil Code of 1901, paragraph 3794, providing that *quo warranto* may be brought by the district attorney in the name of the territory upon the verified complaint of any person, in the district court, against any person who usurps, etc., any franchise, where uncontradicted facts, presented to the district attorney, show as matter of law that a franchise is unlawfully being exercised, his refusal to institute *quo warranto* proceedings is a violation of his duty, and he may be compelled to perform the duty by *mandamus*.

2. SAME—PERSONS ENTITLED TO RELIEF—PERSON "BENEFICIALLY INTER-ESTED."—Civil Code 1901, paragraph 3794, provides that *quo warranto* may be brought by the district attorney in the name of the territory, upon the verified complaint of any person, in the district court, against any person who usurps, etc., any public franchise in the county. Civil Code of 1901, paragraph 3074, provides that *mandamus* shall issue upon affidavit on the application of the party bene-ficially interested. *Held*, that as any person may lay the complaint before the district attorney upon which it may become his duty to bring *quo warranto*, if he unlawfully refuses to act, the person com-plaining is the person "beneficially interested" in the subject mat-ter of a writ of *mandamus* to compel his appropriate action, and hence entitled to the writ.

3. CONSTITUTIONAL LAW—RETROACTIVE STATUTES—POWER TO ENACT.—The legislature cannot retroactively cause a law to mean that which it did not originally mean; but where persons, misconstruing a law, have endeavored to create rights or obligations or avail themselves of privileges thereunder, the legislature may establish them in the rights or obligations which they would not have possessed by remedial legislation, and hence where, under the belief that Civil Code of 1901, paragraphs 3998–4009, providing that fran-chises for toll-roads should exist for ten years, renewable for an additional five years, covered the construction of trails and the collection of tolls thereon, a person actually constructed and main-tained a toll trail, and subsequently attempted to transfer the franchise, which was prevented on the ground that it was not trans-ferable, Laws 1907, page 72, chapter 55, which provided that para-graphs 3998–4009 should be construed to have included trails from the time of its enactment, that the franchises provided for by

section 3 had always been transferable, and which confirmed attempted transfers and gave boards of supervisors power to extend franchises for not to exceed ten years and at the expiration of the extension to contract with some person to take over the road paying a percentage of tolls to the county, and gave the former owner a preference right to the contract, was a proper exercise of the legislature's power to pass retrospective remedial acts.

4. STATUTES—CONTRAVENTION OF FUNDAMENTAL LAW—SPECIAL LEGISLATION—UNREASONABLE CLASSIFICATION.—The preference not being limited to those whose franchises had already expired, but being available indefinitely to those whose franchises should expire in the future, the act was not violative of the Harrison act (Act Cong. July 30, 1886, c. 818, 24 Stat. 170), prohibiting territorial legislatures from passing special laws granting special or exclusive privilege or franchise, as creating a special class limited in numbers, and was not based upon an arbitrary and unreasonable classification; it being reasonable to provide a preference to those who had incurred the labor and risks of constructing and maintaining the road.

5. QUO WARRANTO—GROUNDS—ABUSE OF DISCRETION.—If the board of supervisors, in contracting with the former holder of a toll-road franchise to continue operating the road for the county, abused its discretion by obtaining a less favorable contract than it could have obtained from another responsible person, the remedy is not *quo warranto* to test the right to exercise the franchise, the abuse of discretion having no bearing on the validity of the law or of the franchise.

6. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AUTHORITY.—The act was not invalid as delegating legislative authority to the board of supervisors to extend a franchise, or to contract for the operation of the road after the expiration of the franchise, since the board's act would not be the creation of a franchise, but merely the making available to a franchise holder or contractor a continuance of the franchise already created by the general act of the legislature and in the manner there described.

7. WOODS AND FORESTS—ROADS IN UNITED STATES FOREST RESERVES.—Where a territorial public highway was established over public lands under Revised Statutes of United States, section 2477 (U. S. Comp. Stats. 1901, p. 1567), granting the right of way for the construction of highways over public lands not reserved for public use, the status of the highway became permanently fixed, and was not changed by the subsequent establishment of a government forest reserve embracing land over which it passed, notwithstanding Act of June 4, 1897, chapter 2 (30 Stat. 35, 36; U. S. Comp. Stats. 1901, pp. 1540, 1541), vests the control of highways over forest reservations in the Secretary of the Interior.

PETITION for writ of *mandamus* to require respondent to institute *quo warranto* proceedings. Petition denied.

The facts are stated in the opinion.

U. T. Clotfelter, and Paul Burks, for Petitioner.

The duty of the district attorney, upon a proper showing, to bring *quo warranto* is not discretionary, but mandatory. *Buggeln* v. *Doe*, 8 Ariz. 341, 76 Pac. 458. *Quo warranto* may be brought upon the verified complaint of any person. Rev. Stats. Ariz. 1901, sec. 3794. The act of 1907 is invalid because it attempts to delegate legislative power to the board of supervisors. The legislative power of Arizona is vested in the legislature, and that power cannot be delegated. The granting of a franchise is a legislative act. *People* v. *Board of Supervisors*, 122 Cal. 421, 55 Pac. 131; *Quinchard* v. *Board*, 113 Cal. 664, 45 Pac. 856; *Dougherty* v. *Austin*, 94 Cal. 601, 28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161; *People* v. *Johnson*, 95 Cal. 471, 31 Pac. 611; *State* v. *Baum*, 33 La. Ann. 981; *State* v. *Armstrong*, 3 Sneed (Tenn.), 634; *City* v. *Shelton*, 1 Head (Tenn.), 24; *People* v. *Parks*, 58 Cal. 624.

The act of 1907 is special, because it establishes a class based on existing conditions only, and so constituted as to preclude addition to the numbers included within the class. *Bravin* v. *Mayor*, 4 Ariz. 83, 33 Pac. 589; *Harwood* v. *Perrin*, 7 Ariz. 114, 60 Pac. 891; *Edmunds* v. *Berbrandson*, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725; *Wagner* v. *Milwaukee*, 112 Wis. 601, 88 N. W. 577; *Binney's* Restrictions on Local and Special Legislation, pp. 54, 55, 59, and 78; *Bloomer* v. *Bloomer*, 128 Wis. 297, 107 N. W. 974; *Rutten* v. *Mayor*, 73 N. J. L. 467, 64 Atl. 573. Chapter 55 of the Session Laws of Arizona of 1907 is void because inconsistent with the laws of the United States.

Henry F. Ashurst, and Edward M. Doe, for Respondent.

"Every action shall be prosecuted in the name of the real party in interest." Rev. Stats. Ariz. 1901, par. 1298.

The act of 1907 is valid in its entirety. "I consider it a sound proposition, that wherever the legislative power of a

government is undefined, it includes the judicial and executive attributes." *Copper* v. *Telfair,* 4 Dall. 14, 1 L. Ed. 721.

"There is nothing in the constitution of the United States which forbids the legislature of a state to exercise judicial functions. . . . Retrospective laws which do not impair obligations of contracts, or partake of the character of *ex post facto* laws, are not condemned or forbidden by any part of that instrument." *Satterlee* v. *Matthewson,* 2 Pet. 380, 7 L. Ed. 460.

The act is not objectionable as granting special privileges or franchises because it is made applicable to every person who shall, in the future, bring himself within its provisions and, as well, every person who, in the past, has brought himself therein. It is absolutely uniform in its application to all of a well-defined class.

NAVE, J.—This is an original proceeding in this court to obtain a writ of *mandamus* directed to the district attorney of Coconino county, commanding him to institute *quo warranto* proceedings in the district court of Coconino county to determine by what right one Ralph H. Cameron is exercising a franchise to maintain and collect tolls upon a trail in that county leading down from the rim of the Grand canyon of the Colorado river, and known as the "Bright Angel trail."

The respondent has interposed to the petition an answer in the nature of a plea in abatement, setting forth that petitioner is not a taxpayer or a resident of Coconino county, and therefore that he is not the real party in interest, nor any party in interest in the subject matter of the petition. To this answer the petitioner has demurrer. Paragraph 3794, Civil Code of 1901, under the title of *"Quo Warranto,"* provides as follows: "3794 (section 1). An action may be brought by the district attorney, in the name of the Territory, upon his own information or upon the verified complaint of any person, in the district court sitting for the county for which he is district attorney, against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within said county; and it is his duty to bring the action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised: Provided, that any person

claiming such office or franchise may bring such action in his own name by first applying for and obtaining the leave of said court so to do: And, provided further, that if the office be a territorial office, the attorney general of the Territory shall have like power herein vested in district attorneys." We have already had occasion to hold; in applying this statute, that, where the facts presented to the district attorney show as a matter of law that a franchise is unlawfully being exercised and are not in dispute, the refusal by the district attorney to institute the *quo warranto* proceedings is a violation of his duty, and that we may compel him to perform that duty by our writ of mandate. *Arey* v. *Ashurst* (decided January 9, 1906), 103 Pac. 1133, not officially reported; *Buggeln* v. *Doe*, 8 Ariz. 341, 76 Pac. 458. It is to be observed that the statute which we have just quoted imposes no restriction by way of residence or interest as qualifying the person who may lay a complaint before the district attorney. Doubtless the legislative theory is that in many instances where a public franchise is unlawfully usurped or exercised, there is no person who is especially interested in the sense that his rights are being infringed in a manner or degree other than the rights or interests of each individual of the general public are infringed, and that to impose a restriction of beneficial interest or residence upon the complaining person might be operative to prevent effectual action to induce the district attorney to institute proceedings where the district attorney is indisposed to perform his duty. Paragraph 3074 of the Civil Code of 1901, with reference to the writ of *mandamus,* provides that "it shall be issued upon affidavit on the application of the party beneficially interested." This means, of course, that the petitioner for a writ of *mandamus* must be beneficially interested in the subject matter of that writ. Inasmuch as any person may lay the complaint before the district attorney upon which it may become his duty to institute proceedings in *quo warranto,* it follows that, where the district attorney has exercised an unwarranted discretion in refusing to institute proceedings upon such complaint, the person who brought the complaint is the person beneficially interested in the subject matter of the writ of *mandamus* which is sought to compel the appropriate action. The unlawful refusal to act upon such complaint is an infringement

of the right of the complainant. For this reason it follows that the petitioner's demurrer to the respondent's special answer is well taken, and therefore the demurrer is sustained.

Following the special plea of which we have just disposed, the respondent has interposed a general demurrer to the petition. For purposes of our adjudication of this demurrer, we may state sufficient of the facts appearing in the petition without setting forth the petition in its entirety. The main controversy hinges upon the validity of chapter 55 of the laws enacted by the twenty-fourth legislative assembly, in 1907, amendatory of Civil Code of 1901, paragraphs 3998–4009, prescribing the terms upon which toll-roads may be constructed and maintained within the territory. Pursuant to the provisions of paragraphs 3998–4009, prior to its amendment, one Berry constructed the "Bright Angel trail" and operated it as a toll trail. All of the provisions of that chapter were complied with by Berry. Subsequently Berry undertook to convey his franchise to one Ralph H. Cameron, who took possession of the trail under the conveyance and collected tolls thereon. Proceedings in *quo warranto* were instituted against Cameron in the district court of Coconino county which resulted, in the year 1903, in a judgment of ouster upon the ground that the franchise acquired by Berry was not transferable. Paragraphs 3998–4099, *supra,* provided that the toll-road franchise should exist for ten years, renewable for an additional period of five years under certain conditions. The franchise in question was extended. The maximum life of the franchise under the extension was reached on January 31, 1906. On February 1, 1906, the board of supervisors of Coconino county, acting under the provisions of paragraph 4004, entered into a contract with one Ferrall for the maintenance of the trail and the collection of tolls thereon in the interest of the county. Ferrall took and retained possession thereof under that contract until April 17, 1907. On March 18, 1907, chapter 55, above referred to, became a law. This amendatory law provided, among other things: That the term "toll-road," as used in paragraphs 3998–4009, shall be construed to include trails and to have included trails from the time of its enactment; that all rights and franchises provided for by paragraphs 3998–4009 shall be transferable, and shall be deemed to have been transfer-

able at all times; that all conveyances or attempted transfers of any such franchises are ratified and confirmed; that the board of supervisors of any county in the territory in which any toll-road shall have been or may hereafter be constructed or maintained may, either before or after the expiration of the term of any franchise, extend the term thereof for a period not exceeding ten years; that at the expiration of the original term or of its extension the board of supervisors may enter into a contract with some person to take charge of said toll-road and collect tolls thereon for a period of five years, conditioned upon the payment to the county of a percentage of the tolls to be fixed by the board of supervisors; that the former owner of the expired franchise shall have a preference right to this contract to be availed of within thirty days after the termination of the franchise; that with respect to franchises which may have expired prior to the enactment, the owner of the former franchise shall have thirty days from the passage of the act within which he may have this same preference. Cameron complied with the requirements imposed by statute to avail himself of this last provision, the board of supervisors contracted with him accordingly, and on April 17, 1907, he took possession. The *quo warranto* proceeding is sought to oust him. This statement abstracts very briefly the points upon which stress is laid by the petitioner and contains the substance of those features of the legislation which petitioner contends render it invalid. Without analyzing the entire enactment, we content ourselves with addressing our consideration exclusively to the points which are presented by the petitioner.

Petitioner attacks the enactment upon the ground that it is unlawfully retroactive in so far as it attempts to define what the legislature meant by "toll-road" when the amended act was originally enacted, and in so far as it attempts to validate theretofore void conveyances, contending that the purpose of the legislature and the effect of its act, if held valid, are to reverse decisions of this court and of the district court of Coconino county under which it was held (as petitioner contends) that the words "toll-road" did not comprehend a trail, and that the franchise conferred by the statute was not assignable. Without attempting to review the array of authorities presented in support of the views of petitioner and respondent

upon these features, it suffices to point out that remedial retroactive legislation is a commonplace in legislation, and that such legislation has been held valid in almost innumerable instances. While it is undoubtedly true that the legislature cannot retroactively cause an act to mean that which it did not mean, on the other hand, where persons, by misconstruction of the meaning of an act, and in reliance upon the act, have endeavored to create rights or obligations, or avail themselves of privileges thereunder, the aid of the legislature may often with propriety be obtained to validate that which without the remedial legislation, and until it is enacted, is invalid. It appears from the record before us that in the belief that the toll-road legislation covers the construction of a trail and the collection of tolls thereon (adopting for the purpose of this case, without approval or disapproval, the distinction made by petitioner between a "road" and a "trail," the former as being available for the passage of vehicles, and the latter available only for the passage of saddle animals, pack animals, and foot passengers), Cameron's grantor actually constructed the trail down from the rim of the Grand canyon of the Colorado river and maintained it as a toll trail. We may with propriety ignore those expressions of the statute which assert that "toll-road" included "toll trail" from the very inception of the law, and regard it as retroactively remedial so as to make valid the exercise of the toll trail franchise, by Cameron's grantor. So, also, with respect to the part of the act which validates assignments of such franchises, we may with propriety ignore those expressions which undertake to say that such assignments were valid at a time when they were actually not valid and regard the act, as it is in this respect, as retroactively remedial in the present validation of such past transfers. The principles involved have been so repeatedly stated by courts that it would be a work of supererogation to elaborate them here. While such retroactive legislation may not be tolerated when it adversely affects rights which are predicated upon the invalidity of the exercise of such a franchise or upon the invalidity of such a transfer, on the other hand, it is unobjectionable and uniformly sustained when its effect is merely to establish persons in privileges or rights which were attempted to be availed of or created.

A second objection to the act is based upon the contention that in giving a preference right for a five year contract to those whose franchises had expired prior to its passage, as well as to those whose franchises should expire thereafter, the act is obnoxious to the Harrison act (Act July 30, 1886, c. 818, 24 Stat. 170), in that it creates a special class limited in numbers (possibly limited to Ralph H. Cameron alone) and based upon an arbitrary and unreasonable classification. It is manifest that the number of those whose franchises had expired is limited, but the preference is not limited to them. It is available indefinitely in the future to those whose franchises shall expire from time to time. This fact completely distinguishes this case from the facts involved in the former decision of this court (*Bravin* v. *Tombstone*, 4 Ariz. 83, 33 Pac. 589), cited by petitioner. It is a natural and reasonable classification to provide that the person who has incurred the labor, expense, and risks attendant upon the construction and maintenance for a period of a toll-road, or his grantee, who presumably has paid value for the grant, shall have a preference right to enter into the contract provided for by this legislation. It is as natural and as reasonable as and comparable to that common provision of franchise and corporation laws, occurring also in this act, permitting an extension of the franchise from time to time. It is to be presumed that the board of supervisors will impose upon him the payment of as great a percentage of the toll receipts as it would impose upon any other available contractor, and that in all respects by their fidelity to public interests those interests will be protected impartially. With this assumption it follows that the person to whom this preference right is given will make as favorable a contract with the county as would any other person. The classification itself being reasonable, the inclusion of those whose franchises have expired with those whose franchises shall expire does not invalidate the act. Pausing here to divert to one of the facts which we have not mentioned, we may say that, if the board of supervisors abused its discretion in this case by entering into this contract with Cameron upon a less favorable contract than it could have had with another responsible party, the remedy does not lie in *quo warranto* proceedings; that abuse of discretion has no bearing upon the validity of the law or of the franchise.

The next point of objection to the law is that the authority conferred upon the board of supervisors to extend the franchise, or to enter into a contract for the operation of the toll-road after the expiration of the franchise is legislative; that under our organic law the territorial legislature cannot delegate this legislative power to the board of supervisors. It may not be disputed that the creation of such a franchise is legislative. *California* v. *Railway Co.*, 127 U. S. 1, 8 Sup. Ct. 1073, 32 L. Ed. 150. But in the case before us the extension of the period for which the franchise may be operative, or the making of a contract by which, for a period, the franchise is exercised partly in the interest of the county, is not the creation of a franchise and not legislation. The statute books are replete with instances in which laws of a general nature are operative in the interest and to the advantage of those only, who may, at their own option, avail themselves thereof. For example, we have general laws for the incorporation of private corporations. By complying with those laws, any person may become endowed with a corporate franchise. Petitioners would concur with us in denouncing it as absurd to contend that such persons are legislating when they avail themselves of the corporate franchise, yet the corporate franchise does not exist until they have given the statute application by availing themselves of it. The law, the grant, exists; but the contingency which gives it specific application, which calls the grant into operation and the franchise into being, has not yet occurred. So also that corporation, when once organized, will terminate at the end of twenty-five years unless it is renewed by the vote of three-fourths of the votes cast at a stockholders' meeting held for the purpose. For the same reason the renewal of that franchise would not be denominated even by the petitioner as legislation. We have had recent occasion to pass upon an analogous state of affairs with respect to the local option law, a law applicable in a given community only upon the affirmative vote of a certain majority of the voters. We there said, speaking through Mr. Justice Campbell: "The test is: Was the statute complete when it left the legislature and was approved by the governor? If so it is not rendered invalid, because it may be applied only upon the happening of a contingency or the concurrence of a

XII Ariz.—24

certain set of events." *Thalheimer* v. *Board*, 11 Ariz. 430, 94 Pac. 1129.

The expression is accurate and fully describes the operation of the statute under consideration in this case. Here the grant is complete and available, and the law embodying the grant is operative from the moment of its passage by the legislature. Yet until it is availed of by the optional act of some person, by filing the necessary description of his proposed toll-road and by complying with the other statutory requirements, there is actually no franchise in existence. What the person does who avails himself of the law is, however, not to create the franchise, but to avail himself of the creative act which, when availed of, is self-operative as a present grant of a franchise. In the case now before us, when it comes to the matter of extending the franchise, or continuing its operation by contract, a new party is brought into the transaction. The franchise is not extensible exclusively at the option of the franchise holders, but by the concurrent option of the board of supervisors. When the board of supervisors gives that option, they are not creating the franchise or granting a privilege; they are making available to the franchise holder, or the contractor, a continuation of the franchise already created and granted by the general act of the legislature and in the manner there prescribed. It is comparable somewhat, as already noted, to the vote of the stockholders by whom the franchise of a private corporation may be extended for a period. It is more directly comparable to the approval of a franchise by popular vote such as is required by our general laws, for the inception of a public utility franchise within one of our cities. The legislature by its general act has provided that franchises for the operation of street railways and other public utilities may be enjoyed by one who seeks such a franchise, if upon the submission of the question to popular suffrage a majority of the votes shall be found in favor of the franchise. Here, as in the extension of a toll-road franchise, there must concur the exercise of the option of two parties. Those voting their approval are not exercising a legislative function. They are exercising an option upon which the enjoyment of the franchise grant is conditioned. In so far as the legal analogies and proprieties are concerned, it makes no difference whether the option is left to the body

of the voters or to their elected representatives. If the original enjoyment of a franchise may lawfully be made thus contingent, certainly the extension of an already existing franchise must stand upon an equal plane with, if not in a stronger position than, its inception. The phrases "legislative function," "executive function," "judicial function," are terse and comprehensive. We do not find in the decisions an equally terse and exact descriptive expression applied to the function which is exercised by the voters or the representative body upon whose approval the inception of a franchise is made conditional. It is not the exercise of either of the three functions just enumerated. It is the exercise of a function of referendum. An objection to the word "referendum" as descriptive of the function is that it has an accepted use as describing a legislative process, the reference of laws or constitutional provisions to popular approval as a condition of and a part of the process of their adoption. The procedure under the statutes which we have been considering and under analogous statutes, we may quite exactly define as the reference of a present complete grant or law to the discretion or interposition of a body or executive as an essential condition to the availability of the grant to one desiring it, or the application of the law under specific conditions or to specific communities. Etymologically, the word "referendum" is quite appropriate to the process. The function thus exercised is not legislative. Hence the act in question is not obnoxious to our organic law upon the ground that it is a delegation of legislative power.

The last objection raised by petitioners to the act is based upon the fact that since the construction of the Bright Angel trail, but prior to the passage of chapter 55 in 1907, the Grand canyon forest reserve was created by presidential proclamation, and that the Bright Angel trail is within the boundaries of that reserve. It is contended that the exercise of this franchise under the act of the legislature is a regulation of a highway within that reservation, and hence in conflict with the provisions of the United States laws vesting in the Secretary of the Interior the control of highways over forest reservations. Act June 4, 1897, c. 2; 30 Stat. 35, 36 (U. S. Comp. Stats. 1901, pp. 1540, 1541). It is sufficient answer to this contention to point out that the act referred to seems in terms

to apply only to highways constructed after the establishment of the reservations; and, at all events, that by section 2477, Revised Statutes of the United States (U. S. Comp. Stats. 1901, p. 1567), "the right of way for the construction of highways over public lands not reserved for public use" was fully granted, wherefore the status of the Bright Angel trail as a public highway, constructed, as it was, under that grant, prior to the establishment of the reservation, is permanently fixed. Therefore the establishment of the forest reserve did not operate to change that status. *Montgomery* v. *Somers,* 50 Or. 259, 90 Pac. 674, and cases there cited.

These are the only points to which our attention has been directed as the basis for petitioner's contention that it was the duty of the district attorney to institute the proceedings in *quo warranto* to command which our writ of mandate is sought.

It follows that the exercise of discretion by the district attorney was sound, that the demurrer to the petition must be sustained, and the writ denied.

It is so ordered.

KENT, C. J., and CAMPBELL, J., concur.

SLOAN, J.—I concur in the judgment and in the views expressed by Mr. Justice NAVE, except that I am of the opinion that the demurrer to the plea in abatement should be overruled. I am of the opinion that the petitioner must show that he is "beneficially interested" in having the right of Cameron to maintain the franchise in question determined by *quo warranto.*

DOAN, J.—I concur in the result and in the views expressed by Mr. Justice SLOAN.