[Civil No. 1370.   Filed May 27, 1914.]

[141 Pac. 126.]

THE STATE OF ARIZONA, upon the Relation of JOHN M. HESS, Appellant, v. C. LOUISE BOEHRINGER, Appellee.

1. DISMISSAL AND NONSUIT—AMENDMENT AFTER DISMISSAL.—Where a cause was dismissed, a subsequent motion to amend the title of the action was properly refused.

2. QUO WARRANTO—TITLE TO OFFICE—ACTIONS—PARTIES.—An action in *quo warranto* to determine title to a county office is properly brought by a private individual in his own name, and he may not use the name of the state as plaintiff on his relation.

APPEAL from a judgment of the Superior Court of the County of Yuma. Frank Baxter, Judge. Order affirmed.

The facts are stated in the opinion.

Mr. Thos. D. Molloy, for Appellant.

Mr. Fred L. Ingraham, for Appellee.

CUNNINGHAM, J.—The record here on appeal consists of an agreed statement of the case, and such of the proceedings therein as in the opinion of the parties is sufficient to enable this court to determine whether there has been any error in the judgment. The judge before whom the cause was tried has approved the same, and such statement has been duly filed all in substantial conformity with the provisions of paragraph 1257, Civil Code of Arizona of 1913.

The action was authorized to be commenced by the superior court of Yuma county by an order made on the application of John M. Hess, granting him leave to commence an action in *quo warranto* against the appellee, C. Louise Boehringer, to determine the right and title to the office of school superintendent of Yuma county. The record does not contain other of the complaint than its title, viz., *"John M. Hess, Plaintiff,* v. *C. Louise Boehringer, Defendant,"* and its number 2042. It is stipulated that the complaint alleged, in effect: "That on June 10, 1913, the plaintiff was the duly elected, qualified and acting school superintendent of Yuma county, Arizona, and on said day the defendant unlawfully intruded into said office and ousted plaintiff therefrom."

Citation was issued, but was not served on defendant. On July 7, 1913, one of the attorneys for Hess moved the court for permission to amend the title of the action in respect to the party plaintiff, and for an order to change upon the records of the court such title, so being prosecuted in the name of the state upon the relation of said Hess, and that leave be given to file an amended complaint in conformity to such change, and that an *alias* summons be issued. The court granted the motion, and ordered that the title of the cause be changed upon the register of actions and the records of the court to *"The State of Arizona, upon the Relation of John*

XVI Ariz.—4

*M. Hess, Plaintiff,* v. *C. Louise Boehringer, Defendant,"* and leave was granted to file an amended complaint, and the clerk was ordered to issue an *alias* summons upon such amended complaint. The amended complaint was filed in the original case, No. 2042, containing the amended title of parties, and substituting the word "relator" for "plaintiff" where it occurred in the complaint originally filed. No other amendments appear to have been made to the original complaint so far as the stipulation shows. The *alias* summons was issued and served upon the defendant. The defendant answered September 22, 1913. The answer consisted of a demurrer upon the grounds of insufficient facts alleged; and upon the ground that relator had another plain, speedy and adequate remedy at law, and other grounds. An answer upon the merits set up title in defendant to the office in controversy by virtue of defendant's having received a plurality of votes at a certain recall election held in said county on May 31, 1913, for said office, whereby the relator was recalled from said office; and defendant pleaded an estoppel on the grounds that relator had demanded and accepted $200 from the county allowed him under the provisions of chapter 12, Laws of 1912, first special session.

On September 26, 1913, the defendant filed a verified additional plea as follows: "Comes now the defendant above named, and files this her answer supplemental to the answer already filed by her in this action, and as a further defense thereto alleges that the plaintiff in this action, at the time of the bringing of this action, had no authority or power to bring this action; that this action was not brought by the county attorney of Yuma county, nor by any officer or person having authority or lawful power to bring this action on behalf of the state of Arizona."

The prayer is that the action be dismissed and all pleadings stricken from the files. On October 20, 1913, the court granted the motion, and ordered the action dismissed as prayed. The appellant thereupon moved the court for leave to amend the complaint as to the original allegations, making John M. Hess plaintiff therein, and prayed for leave to prosecute the action in the name of John M. Hess as plaintiff. This motion was denied. The court rendered judgment dismissing the action without prejudice, upon the grounds that

the action cannot be maintained in the name of the state of Arizona at the relation of a private party, but the action must have official approval before the name of the state can be used as a party.

This appeal is prosecuted from the order dismissing the action, and from the order refusing leave to amend. A bond on appeal was furnished by plaintiff relator. He assigns as error the order of dismissal and the order refusing leave to amend.

The second assignment, the order refusing plaintiff leave to amend and prosecute the cause in the private capacity, presents no question affecting this action. The cause was dismissed at the time the motion was made. If the order of the court dismissing the action was permitted to remain effective, and was effective at the time the appellant's motion to amend was made, nothing existed to amend. No action was pending the pleading in which could be amended. The motion was made after the order of dismissal was made. If such motion could be effective for any purpose, it could be effective only as an application for leave to bring an action in *quo warranto* in the name of the claimant. To so consider the motion, this court would be assuming to go far beyond the parties.

The other assignment presents a question decisive of the controversy. The order dismissing the cause without prejudice was made on October 20, 1913, and thereafter this appeal was perfected. An order of dismissal without prejudice is not a final determination of the controversy on its merits, and is no bar to the prosecution of another suit timely commenced, founded upon the same cause of action. An appeal from such order may be prosecuted, however, under subdivision 5 of paragraph 1227, Civil Code of Arizona of 1913, when such order in effect determines the action and prevents final judgment from which an appeal might be taken. Such appears to be the effect of this order of dismissal.

"An action may be brought by the district attorney, in the name of the territory, upon his own information or upon the verified complaint of any person, in the district court sitting for the county for which he is district attorney, against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within said county; and it is his duty to bring the action whenever he

has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised: Provided, that any person claiming such office or franchise may bring such action in his own name by first applying for and obtaining the leave of said court so to do.'' Paragraph 3794, Ariz. Rev. Stats. 1901.

This statute names the parties that are necessary to maintain the action to try the title to a public office. Since statehood the suit to try the title to a county office must be brought by the county attorney of the proper county in the name of the state upon his own information, or upon the verified complaint of any other person presented to the county attorney, informing him of the facts justifying the bringing of the action. In either case the suit must be brought in the name of the state. When the county attorney brings the suit upon his own information, or upon the verified complaint of any other person, the only condition the law makes to his bringing the action is that he, as such officer, must legally believe that a public county office has been usurped, intruded into, or is being unlawfully held. When he so believes, the law makes the bringing of the suit in the name of the state the officer's public duty. Under such circumstances, no leave of the court to bring the suit is required. Such suit is a public action, and the public is the real party in interest. The public prosecutes its suits in the name of the state to redress all public wrongs, civil as well as criminal. If, however, any person is claiming the right to such office, and is deprived thereof by such usurpation or intrusion, he may bring such action in his own name, by first applying for and obtaining the leave of the court to do so. Such right is granted a party by the statute. The evident purpose of the statute is to permit the person, who has suffered a special injury by reason of the usurpation of, or intrusion into the office, to recover the rights personal to him and not suffered by the public. If he has been deprived of an office rightfully belonging to him, the public generally has suffered a wrong thereby, and he who is deprived of the office has suffered a wrong done especially to him individually and independently from the public wrong, and the law furnishes such person with this remedy for a redress of his personal wrong suffered.

This remedy may be employed by such person and prose-
cuted in his own name upon the performance by him of a
condition precedent, viz., upon the condition that he first
apply to the superior court of his county for, and obtain
leave from such court to bring the action for his special relief.
The action, when commenced by a claimant of a public office
to recover the office from one who intrudes into or usurps
such office, is a very different action from one commenced
by the public to remove a person who has intruded into, or
usurped, such office. The first is by the alleged rightful officer
to recover possession of the office and the accompanying
profits. The other is to remove one from, and prevent such
person from performing public duties without public author-
ity to do so. In the first, the person claiming the office must
show his rights thereto which give him an especial interest
in the remedy as well as the fact of usurpation or intrusion.
In the other, the state must only show in its complaint the
fact of usurpation or intrusion. No special injury need be
alleged by the state. The evident purpose of the statute re-
quiring the claimant to apply for leave to bring the action
in his own name is that the court may first become satisfied
that the claimant has suffered an injury special to himself,
not suffered by the public as a whole. The statute is silent as
to the manner in which the claimant shall apply to the court
for such leave, whether by a verified petition alone, or accom-
panying it with affidavits setting forth facts, or by a simple
petition unverified and unsupported by accompanying affi-
davits. It is clear that the application must present a *prima
facie* state of facts to the court that would permit the appli-
cant to recover for the special injury done him by reason
of the usurpation or intrusion complained of, in order to grant
the petition. It would seem that the law contemplates a
verified application. The application of any person made to
the county attorney to start that officer in action must be by
verified complaint, and the usual policy of the law is to re-
quire all *ex parte* applications to be verified before any action
be taken thereon. That question is not raised in this record,
and we do not decide it.

The record shows that the application for leave to bring
the action was made by John M. Hess, and that such leave
was granted, and he brought the action, alleging that he was

the duly elected, qualified and acting officer on June 10, 1913, and on that day the defendant unlawfully intruded into the office in question and ousted him therefrom.   These allegations certainly are sufficient to show *prima facie* that the plaintiff has sustained a special injury, and, if they satisfy the court, the applicant is entitled to the order granting him leave to bring the action in his own name and in that name maintain the same, as the real party in interest.   If the record stopped at this point no difficulties would present themselves. Plaintiff did not desire to stand upon his original complaint, but before service upon the defendant he applied for, and obtained leave to amend his original complaint by adding to the title of the parties the words ''The State of Arizona, upon the Relation of John M. Hess,'' and in the body of the complaint amended by stating ''relator,'' instead of ''plaintiff,'' when referring to John M. Hess.   So far as the record discloses, no other amendments were made.   When the amendments had been made, an *alias* summons was issued and served. The defendant appeared and answered to the merits.   Later an additional answer was filed, challenging the plaintiff's authority to maintain the action as presented by the amended complaint, that is, that the state had no authority to prosecute the action at the relation of John M. Hess, the claimant of the office in question, and the court was without authority to grant such leave upon the application of such person.   The court and the parties treated and considered the pleading as a motion to dismiss, and as such the court granted the motion.

Orderly procedure would direct that a motion to quash the writ should be made before pleading to the information or complaint; and a complaint filed by a person having no right or authority to do so will be dismissed.   32 Cyc. 1459.

The motion in question, although filed out of time, goes in effect, not to the complaint and its sufficiency, as supposed by counsel, but it directly attacks the original application for leave to bring the action, and challenges the sufficiency of the application made to authorize the court to make the order authorizing the bringing of the action.   The sufficiency of the complaint is attacked by a demurrer.   In this case the original order granting leave to John M. Hess to bring the suit in his own name was in effect amended by the subsequent order permitting the amendments of the title as it

affects the party plaintiff, and the two orders must be considered the authority for bringing the action. Then the application for leave to bring the action must be considered as an application to bring the action in the name of the state upon the relation of Hess for the purpose of determining the right and title of John M. Hess to the office in question, and so the orders of the court granting leave must be considered as an order to so bring the action for such purpose in the name of the state. Otherwise, the change in the title and the change in the original complaint would not amount to an amendment, but would amount to the commencement of a new suit. The citation or summons to the defendant would not then be an *"alias,"* but it would be an *"original"* summons or citation. The court and counsel treated the matter as an amendment, and so it should be treated by this court upon this, the stipulated, record. The motion to dismiss directly attacks the authority of the court to grant such leave upon such petition for such purpose. The order of the court granting leave to bring the action in the name of the state at the relation of a claimant was clearly erroneous and voidable. The court has an inherent power over its orders made pending the litigation, and if the court is satisfied that an erroneous order has been made at an earlier stage of the proceeding, it becomes the duty of the court to correct such error even after judgment. The court is given no power under title 59, Revised Statutes of 1901, to grant to a private person the privilege of using the name of the state at his relation as a party to a lawsuit to redress a private wrong. The legislative authority has granted to the designated public officers the exclusive privilege and discretion to use the name of the state to redress a public wrong, to try the title to a public office. The designated officer may so use the name of the state for said purpose in two instances: First, "upon his own information or belief"; or, second, "upon the verified complaint of any person." Paragraph 3794, Ariz. Rev. Stats. 1901. If the officer is without personal information upon the subject, and a verified complaint is filed with him, and he has reasons therefrom to believe that any office or franchise is being usurped or intruded into, it becomes the duty of the officer to bring the action for the state. No leave of the court is necessary under such circumstances. The court may, how-

ever, permit the claimant of the office to bring the action *in his own name,* by showing to the satisfaction of the court that such claimant has a cause of action in his own right; that the claimant has suffered a special injury. The leave to be granted by the court extends only to grant the applicant the privilege to bring the action in the *name* of the applicant, and does not extend to the privilege to bring the suit in the name of the state—the county attorney is given that privilege, it is made his duty to do so, and he may be compelled to perform that duty in a proper case. *Duffield* v. *Ashurst,* 12 Ariz. 360, 100 Pac. 820.

That the result may be practically the same is no reason that the actions are not different in material respects. The claimant of the office usurped or intruded into may have his rights thereto adjudicated either in an action by the state upon the initiative of the county attorney if a county office is involved, or upon the initiative of the attorney general if a state office is involved, or he may proceed for that purpose in his own name, by leave of the court first obtained. In this cause the appellant has followed neither course pointed out by the statute, but he applied to the court for leave to bring the action in the name of the state upon his relation. That leave was granted in the first instance, but later the leave was refused, and correctly so. No other course was open to the court but to order the action dismissed, when it was made to appear that leave had been improvidently granted. This order did not have the effect to close to the appellant either of the other modes provided. The claimant is not excused from following some course not recognized by the statute because the county attorney represents the defendant in the case. He is nevertheless the county attorney, and if any person files with him a sufficient verified complaint and presents such reasons which induce him to legally believe that any office is being usurped or intruded into, he must bring the suit in the name of the state. Appellant is not forced to resort to that line of procedure, however, but may proceed otherwise to obtain leave to bring the suit in his own name, and the court must grant the leave upon a proper showing made. The court cannot arbitrarily refuse to grant the leave when proper application is made therefor. To permit a claimant to bring the action in the name of the state would be for

the courts to establish a third method not recognized by the legislative power of the state, by which the title to a public office may be tried by the action of *quo warranto* at the suit of the state. Such a course is judicial legislation, and is not to be recognized as within the province of the judiciary.

The order appealed from is affirmed.

ROSS, J., Concurring.—After obtaining permission of the court, appellant correctly instituted his action in his own name. Thereafter he, in effect, abandoned that action by substituting as the party plaintiff, for himself, the state of Arizona on his relation. Thereupon, on motion of appellee, the court ordered the dismissal of the action for the reason that it had been instituted and was being prosecuted in the name of the state without legal authority having been first obtained. The purpose of the action was to redress a wrong and secure a right peculiarly personal to appellant. In such an action he had no right to use the name of the state, and I am of opinion that the court properly so held in entering the order of dismissal.

After the case was dismissed the request to amend the title thereof by substituting appellant's name for the name of the state as plaintiff came too late, and was properly refused. The error of permitting appellant to change his action from a personal one to one by the state on his relation was induced by appellant's misconception of the law, and on his application, and to sustain his contention on this appeal would result in mulcting the appellee with the costs of both courts, for a mistake of appellant.

FRANKLIN, C. J., Dissenting.—This is a proceeding in *quo warranto*. The action was begun by John M. Hess, as plaintiff, who claimed the office of school superintendent of Yuma county, as against C. Louise Boehringer, defendant, who is alleged to have intruded into and to be in the possession of and exercising the duties of such office to the exclusion of plaintiff. The plaintiff, Hess, claiming the office, brought the action in his own name by first applying for and obtaining the leave of the court so to do. The situation to be untangled here arose by reason of the following rather novel proceedings on the part of the plaintiff, Hess. After obtaining the consent of the court so to do, and bringing the action in his

own name, he obtained an order of the court to the effect that the title of the case be changed upon the register of actions on the records of the court to *"The State of Arizona upon the Relation of John M. Hess, Plaintiff,* v. *C. Louise Boehringer, Defendant."* The order was made and allowed plaintiff to file an amended complaint and have an *alias* summons issued. Pursuant to the order granted, the amended complaint was filed, showing the proceedings to be in the name of the state of Arizona on the relation of John M. Hess, plaintiff. In this state of matters the court determined that plaintiff had no authority or right to prosecute the action in the name of the state on his relation. The court denied plaintiff's request for leave to file a second amended complaint to show that the action was being prosecuted by the plaintiff in his own name, and not in the name of the state of Arizona on his relation. This method was sought to be pursued by the plaintiff so as to revert back to the original status of the proceeding. Upon denying the leave requested, the court dismissed the case, but without prejudice. From these symptoms will a diagnosis of the case ascertain whether there be any matter inclining to sanguine circulating beneath the texture of this record. In fine, this court must determine if plaintiff has a right that can be preserved to him, and, if it so determine that he has such right, preserve it, even though he has misconceived the technique of legal procedure and thus complicated the situation and jeopardized the right. If there be such right it ought to be preserved, providing only that in its preservation no right of the other party will be violated.

Historically, the origin and exercise of the writ of *quo warranto* presents a fascinating study, but the very fascination of it very often occasions some perplexity in the mind of the student or practitioner. Anciently it was the king's writ of right made returnable before his justices in eyre. By this extraordinary writ the king, as the very fountain and majesty of government, required a subject alleged to be exercising a special privilege to present himself and show by what authority he thus acted; the theory being that all privileges conferred upon an individual or corporation, and not enjoyed by the public generally as a matter of common right, were gifts from the crown, and so under the dominion of the king.

It was a high prerogative and extraordinary writ of right to the king, and in its nature a public proceeding to correct a public injury. At the common law there seems to be no precedent of a *quo warranto* since the justices in eyre were abolished. About the time of Edward III the writ in its ancient purity fell into disuse because an information by the king's attorney general answered the same end, and was copied from and framed upon the old writ. By the Statute of Anne, however, a wide departure was made, and the original purpose of the writ generally enlarged so that private individuals were permitted in certain cases, but, providing they first obtained leave of the court so to do, to file an information in the nature of *quo warranto,* even though a public interest was not immediately and strictly concerned in the proceeding. Under this Statute of Anne, however, the writ did not run in the name of the private person who invoked it, but the writ was issued and the proceeding was conducted in the name of the king. In the ninth year of Queen Anne this famous remedial statute on the subject of informations in the nature of *quo warranto,* in cases of usurpations or intrusions into offices and franchises of municipal corporations, was passed. This statute has furnished a model for those of many statutes, and, in substance, it has been very generally re-enacted in this country. I shall not pause for further digression into historical matters. Its historical significance is important here only that it may account for the predicament in which plaintiff places himself by his method of proceeding. This limited *résumé* is sufficient to indicate, however, that at common law and under the Statute of Anne and kindred statutes, the proceeding must be instituted and prosecuted in the name of the sovereign, or requiring the government always in some form to appear of record as plaintiff.

It has been aptly observed that: "When, as has been a common occurrence, references are made and discussions pursued concerning historical matters connected with the remedy, and with statutory modifications in England, in voluminous prolixity—sometimes to the edification, but oftener to the confusion of the practitioner or student—it should be borne in mind that such displays of erudition, whatever be their design, cannot possibly enlighten the reader upon the funda-

mental principles underlying the jurisdiction in *quo warranto.*" Spelling on Extraordinary Remedies, sec. 1767.

I am persuaded, therefore, that plaintiff became confused in the technique of legal procedure, in his effort to obtain the object of the remedy he sought, and from a consideration of its historical aspect requiring the sovereign or government in some way and in each instance to appear as plaintiff. In this view the significance of our statutory expression became obliterated.

Recurrence must be had to our statute, then, to measure the rights of the plaintiff in this case. I quote as relevant paragraph 3794:

"An action may be brought by the district attorney, in the name of the territory, upon his own information or upon the verified complaint of any person, in the district court sitting for the county for which he is district attorney, against any person who usurps, intrudes into or who unlawfully holds or exercises any public office or any franchise within said county; and it is his duty to bring the action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised: Provided, that any person claiming such office or franchise may bring such action in his own name by first applying for and obtaining the leave of said court so to do: And, provided, further, that if the office be a territorial office, the attorney general of the territory shall have like power herein vested in district attorneys."

Paragraph 3795 also provides: "When such action involves the right to an office, the complaint must show the one who is entitled to the office, and the issues made thereon shall be tried, and the judgment rendered shall adjudge who is entitled to the office."

The law-making power has the undoubted right to control and regulate the exercise of the writ and the use of the remedy; and, while its origin is ancient, its *corpus,* nevertheless, is not sacred beyond the legislative approach. The province of the court is narrowed, then, to ascertain what this statute really says, that is, what the law is. Arizona says that the proceedings may be brought by certain appointed governmental agencies in the name of the state, upon their own information, or upon the verified complaint of any per-

son. Here is a restriction designating certain officers who may invoke the exercise of the writ in the name of the state. But the statute also says that, in one instance, to wit, when a person claims a public office or franchise, he may bring the action *in his own name* as against any person who usurps, intrudes into, or unlawfully holds or exercises the same. And this is upon one condition only, that such claimant first obtain the leave of the court so to do. In the first instance the legislature has conserved the interests of the public in matters affecting the whole community alike, by the state proceeding through its appointed agencies and in the name of the state. While it is not essentially criminal, yet it is a *quasi*-criminal method of prosecution as well to punish the usurper by a fine for the usurpation of the office as to oust him. Bailey on Habeas Corpus (Quo Warranto), sec. 315; Spelling on Extraordinary Remedies, sec. 1768; Ariz. Rev. Stats. 1913, par. 1602. In the latter feature of the statute the writ is employed to try the right of a person claiming to an office, where his interest is a special and distinct interest and his damages are equally distinct, for if judgment be rendered upon the right of the person alleged to be entitled to the office in favor of such person, he may recover, by action, the damages which he shall have sustained by reason of the usurpation of the office by the defendant. Paragraph 1600, Ariz. Rev. Stats. 1913.

Where a person claiming an office brings the action in his own name upon obtaining leave of the court so to do, the mode of proceeding in *quo warranto* is unencumbered with the burden of the criminal form, and is purely a civil action for the enforcement of a civil right. The injury asserted being peculiar to the individual, he is given the right of action in his own name if, upon application to the court, he is permitted so to do. It is the spirit and letter of our statute relating to *quo warranto* that grievances of a public character affecting the whole community alike (and of course the usurpation of a public office is such a grievance) must be investigated through the agency of a public officer. But it is also the spirit and purpose of that statute to employ the writ to try the right of a person claiming a public office at the suit of such person in his own name, provided, only, that he must first obtain leave of the court to so employ such writ. The

statute has created or recognized an additional province of the writ wherein the interest of an individual in ending the claimed usurpation of a public office is other than such as is common to the public generally.

The statute in plain and unambiguous language says that any person claiming such office may bring such action in his own name by first applying and obtaining the leave of the court so to do, and if we are to yield to this language its ordinary acceptation, it will bear no other construction and interpretation than such as is embodied in the general statement. The plaintiff obtained such leave and brought his action, and though by his own improvident request he complicated the situation and jeopardized his right, the court was equally improvident in granting the request and permitting him so to do. In this situation it would subserve no useful purpose to deny plaintiff his day in court on his original complaint, and in refusing to do so no right of the defendant will be denied.

By the Arizona statute it is not a matter of absolute right on the part of a private person claiming a public office to exercise the writ of *quo warranto* to try his title to the office, but a very wide latitude is given to the court in such an instance. Nevertheless, when the court in the exercise of such discretion permitted such proceeding to be brought in the name of a private person, its discretionary power is thereby exhausted, and the issues of fact and law as presented must at the trial be determined according to the rules of law as in ordinary cases. Spelling on Extraordinary Remedies, sec. 1777. Such a purpose should not be frustrated by any mere misconception of the technique of procedure in pursuing the object of the statute, when the result of such a misconception has been looked upon by this court as of no validity.

Frankly, the opinion of the majority recognizes not only its improvidence, but the invalidity of the order of the court permitting the amendment, and, in the same breath, brushes away the exercise of the court's discretion in granting authority to Hess to file the complaint in his own name—which, upon this record, we must concede to have been the exercise of a legal discretion confided by the express words of the statute—and shutting the door of the court in the face of a suitor on account of a pure technicality in the method

of procedure. The court may hold the word of promise to the suitor and then break it to his hope for a trifling consideration, and this on a misconception by both court and counsel of the technique of legal procedure. This, indeed, is to palter in a double sense. The discretion of the court, when once exercised under this statute, should not be thus frivolously bandied about. The exigency of this case may impel to a toleration of such procedure, but I doubt the expediency of denying a party his day in court to press his cause to a conclusion upon trifling considerations of purely technical procedure, whether that cause be impregnated with merit or the lack of it. Technicality is thus hoisted up by force of block and tackle above the principles of substantial justice and without necessity. Such does not tend to lessen a conception that brings the administration of the law into disrepute, nor allay a feeling that a court of justice is often a tournament of wit, and, being of wit and not of right, is often a delusion and a snare.

In my judgment the action of the lower court should be reversed, and the case remanded, with directions to strike from the files the pleadings, wherein, in case numbered 2042 in the lower court, the state of Arizona, upon the relation of John M. Hess, appears as plaintiff, against C. Louise Boehringer, defendant, and proceed with the case on the original complaint filed, granting full opportunity to the defendant to appear and make such defense to the action as she may be advised and as the law may require, each party to pay his own costs on this appeal, and the costs of the lower court to abide the final result of the case; this appeal being considered that of Hess in his own name. Such a course would preserve a right and trespass upon none, and such is the duty and ought to be the accomplishment of every court whenever possible.