SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| LEONEL GARZA, | ) Arizona Supreme Court |
| | ) No. CV-08-0382-PR |
| Plaintiff/Appellant, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 07-0472 |
| SWIFT TRANSPORTATION CO., INC., | ) |
| | ) Maricopa County |
| Defendant/Appellee. | ) Superior Court |
| | ) Nos. CV2004-001777 |
| | )      CV2004-005924 |
| | )      (Consolidated) |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable F. Pendleton Gaines, Judge

**REMANDED**

_____

Memorandum Decision of the Court of Appeals, Division One
Filed Jul. 31, 2008

**VACATED**

_____

HAGENS BERMAN SOBOL SHAPIRO, L.L.P.                          Phoenix
     By   Robert B. Carey
          Amy M. Wilkins
Attorneys for Leonel Garza

POLSINELLI SHUGHART, P.C.                                    Phoenix
     By   Marty Harper
          Kelly J. Flood
          Natalia A. Garrett
Attorneys for Swift Transportation Company, Inc.

_____

**R Y A N**, Justice

¶1     In this case, we address whether the court of appeals properly exercised jurisdiction over an appeal from a superior court order denying a motion for class certification. We hold that the court of appeals lacked appellate jurisdiction.

**I**

¶2     Swift Transportation Company is a trucking company headquartered in Phoenix. Leonel Garza drove for Swift briefly in 2002. Garza signed a standard form contract providing he would be paid $0.82 per "dispatched mile." This form contract was signed by some 500 to 1,000 other Swift drivers. Swift offered trips through a two-way satellite communication device to drivers who had signed the contract. The device informed the driver of the starting point, the destination, and the estimated mileage for each offered trip. A driver then accepted the offer by notifying Swift through the device.

¶3     After his contract terminated, Garza claimed that Swift had miscalculated the "dispatched" miles he drove by ten to fifteen percent. Garza alleged about $1,500 in damages. Garza also asserted that Swift systematically underestimated mileage and, by doing so, routinely underpaid its drivers.

¶4     Garza filed a class action complaint under Arizona Rule of Civil Procedure 23 ("Rule 23") on behalf of himself and other drivers who had signed the form contract. Garza defined the class, in part, as "[a]ll persons who contracted with Swift

Transportation [through the form contract]."

¶5 The superior court denied class certification, finding that (1) Garza did not have a claim under his proposed definition of the class, (2) the class was not adequately defined, and (3) the dispute over the meaning of the contract term "dispatched miles" would require inquiry into extrinsic evidence for each class member. The superior court then determined that Garza's individual claim was subject to compulsory arbitration. *See* Ariz. R. Civ. P. 72.

¶6 Garza appealed the denial of class certification.[1] Without discussion, the court of appeals found appellate jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(D) (2003). *Garza v. Swift Transp. Co. Inc.*, 1 CA-CV 07-0472, 2008 WL 3009961, at *2, ¶ 10 (Ariz. App. July 31, 2008) (mem. decision). The court then vacated the superior court's denial of class certification, *id.* at *1, ¶ 1, determining that Garza has a claim typical of other potential class members' claims, *id.* at *4, ¶ 21, and holding that the term "dispatched mile" should be interpreted uniformly for all class members, *id.* at *7, ¶ 30.

¶7 Swift petitioned for review, but its petition did not address appellate jurisdiction. We granted review and ordered

---

[1] The court of appeals subsequently stayed the arbitration proceedings.

the parties to submit supplemental briefs on the jurisdictional issue. *See Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981) (noting duty to determine existence of appellate jurisdiction). We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and under A.R.S. § 12-120.24 (2003).

**II**

¶8        Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In appropriate cases, class actions provide an efficient method of litigating claims involving large numbers of people. *See Andrew S. Arena, Inc. v. Superior Court*, 163 Ariz. 423, 425, 788 P.2d 1174, 1176 (1990).

¶9        The federal courts of appeal long struggled with whether a district court's order denying class certification was an appealable order under 28 U.S.C § 1291 (2006) (providing for appeals from "final decisions of the district courts of the United States"). *Compare King v. Kan. City S. Indus., Inc.*, 479 F.2d 1259, 1260 (7th Cir. 1973) (holding order denying class

4

certification not immediately appealable), *with Eisen v. Carlisle & Jacquelin*, 370 F.2d 119, 120-21 (2d Cir. 1966) (finding such an order immediately appealable). Even those federal courts finding orders denying class certification appealable acknowledged that such decisions were not technically final judgments under § 1291 because they did not finally dispose of the underlying action. *See, e.g.*, *Eisen*, 370 F.2d at 120. Those courts, however, applied the so-called "death knell" doctrine to find finality when, because of the small size of the claim, "a plaintiff simply [could not] continue his law suit alone." *Korn v. Franchard Corp.*, 443 F.2d 1301, 1306 (2d Cir. 1971). Under that doctrine, if an appellate court determined that the litigation would be summarily concluded because individual claims were so small that "no lawyer of competence [would] undertake [such a] complex and costly case," it treated the denial of class certification as a "final order." *Eisen*, 370 F.2d at 120; *see also Green v. Wolf Corp.*, 406 F.2d 291, 295 n.6 (2d Cir. 1968) (finding appellate jurisdiction under § 1291 when absent class certification, "the litigation will very likely terminate without reaching the merits").

¶10 The death knell doctrine did not automatically allow an appeal of right when the individual claim of the putative class representative was nominal. For example, some courts declined to apply the doctrine when prospective claimants other

than the putative class representative had resources to proceed or if an award of attorneys' fees was available. *See, e.g.*, *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 69 (4th Cir. 1977) (refusing to apply death knell doctrine when several class members were financially capable of carrying suit individually); *Johnson v. Nekoosa-Edwards Paper Co.*, 558 F.2d 841, 844 (8th Cir. 1977) (noting that the possibility of attorneys' fees "significantly undercuts the economic rationale for the death knell doctrine"); *West v. Capitol Fed. Sav. & Loan Ass'n*, 558 F.2d 977, 981-82 (10th Cir. 1977) (finding ability to recover attorneys' fees among factors in rejecting death knell); *Hackett v. Gen. Host Corp.*, 455 F.2d 618, 622-23 (3d Cir. 1972) (observing that a lawyer might take a case when attorneys' fees are available which would undermine the rationale of the death knell doctrine); *City of N.Y. v. Int'l Pipe & Ceramics Corp.*, 410 F.2d 295, 299 (2d Cir. 1969) (finding no death knell when the "City and [various intervenors] with adequate resources to continue the action and with substantial amounts at stake [would] undoubtedly carry on"). Under these decisions, appellate jurisdiction turned on consideration of various case-specific factors unrelated to the merits of the underlying order denying class certification.

¶11    The United States Supreme Court ultimately rejected the federal death knell doctrine in *Coopers & Lybrand v.*

6

*Livesay*, 437 U.S. 463, 465 (1978). The Court held that federal courts of appeal could not find class certification denials appealable as a matter of right under 28 U.S.C. § 1291 by "identify[ing] on a case-by-case basis those few interlocutory orders which, when viewed from the standpoint of economic prudence, may induce a plaintiff to abandon the litigation." *Id*. at 471. Citing Rule 23(c)(1) of the Federal Rules of Civil Procedure, the Court reasoned that because orders denying class certification may be amended at any time, such orders do not fall within the "small class" of decisions excepted from the finality requirements of § 1291. *Id.* at 469-70 & n.11. The Court thus concluded that "orders relating to class certification are not independently appealable." *Id*. at 470.[2]

### III

¶12      Our court of appeals "derives . . . appellate jurisdiction wholly from statutory provisions." *Eaton v. Unified Sch. Dist. No. 1*, 122 Ariz. 391, 392, 595 P.2d 183, 184 (App. 1979) (citing Ariz. Const. art. 6, § 9), *approved and adopted*, 122 Ariz. 377, 595 P.2d 169 (1979). In general, "the types of judgments and orders from which appeals may be taken are set forth in A.R.S. § 12-2101." *Id*. "With certain

---

[2]    In 1998, the Federal Rules of Civil Procedure were amended to permit limited discretionary interlocutory appellate review of grants and denials of class certification. *See* Fed. R. Civ. P. 23(f).

exceptions . . ., the power of [an appellate court] to review judgments of the superior courts is limited by A.R.S. § 12-2101(B) to appeals 'from a final judgment.'" *Rueda v. Galvez*, 94 Ariz. 131, 132, 382 P.2d 239, 239 (1963).

¶13    Garza first argues that the order denying class certification was a final judgment under Arizona Rule of Civil Procedure 54(b), which permits entry of final judgment as to fewer than all of the claims in a case when there is "no just reason for delay and upon an express direction for the entry of judgment." Garza is mistaken; the superior court specifically removed the Rule 54(b) language as well as the words "final judgment" from Garza's proposed order before signing it.

¶14    Garza next argues that the court of appeals had jurisdiction under A.R.S § 12-2101(D), which allows an appeal "[f]rom any order affecting a substantial right made in any action when the order in effect determines the action and prevents judgment from which an appeal might be taken." Garza argues that appellate jurisdiction was proper under this section because denial of class certification effectively ended the litigation of his claim. He maintains that his claim is too small to justify the cost of proceeding individually, thus preventing "judgment from which an appeal [may] be taken."

**A**

¶15    The exception to the final judgment rule codified at

8

A.R.S. § 12-2101(D) has existed in Arizona without material change since statehood, *see* 1913 Civ. Code § 1227(5), and was the subject of early interpretation by this Court, *see State ex rel. Hess v. Boehringer*, 16 Ariz. 48, 51, 141 P. 126, 127 (1914) (holding that a dismissal without prejudice was appealable under this subsection when the order of dismissal "in effect determines the action and prevents final judgment . . . ."). The classic example of an order falling under § 12-2101(D) is a dismissal without prejudice entered after the statute of limitations has run. Absent a savings statute, unless that non-final order can be appealed, it "in effect determines the action," as any refiled action would be barred. *See McMurray v. Dream Catcher USA, Inc.*, 220 Ariz. 71, ___, ¶ 4, 202 P.3d 536, 539 (App. 2009) (explaining absence of appellate jurisdiction when plaintiff's complaint was dismissed without prejudice unless statute of limitations had run) (citing *Boehringer,* 16 Ariz. at 51, 141 P. at 127); *Edgar v. Garrett*, 10 Ariz. App. 98, 101 & n.5, 456 P.2d 944, 947 & n.5 (1969) (dismissal for lack of prosecution appealable when statute of limitations has run).

¶16     Other decisions correspondingly hold that § 12-2101(D) bestows jurisdiction on the court of appeals only when a non-final order precludes a party from obtaining an ultimate judgment as a matter of law. *See, e.g., Rollin v. William V. Frankel & Co., Inc.*, 196 Ariz. 350, 351-52, ¶ 4, 996 P.2d 1254,

9

1255-56 (App. 2000) (accepting § 12-2101(D) jurisdiction when case dismissed for lack of personal jurisdiction); *Dusold v. Porta-John Corp.*, 167 Ariz. 358, 361, 807 P.2d 526, 529 (App. 1990) (asserting as alternative basis for jurisdiction that when dismissal was for lack of subject matter jurisdiction, § 12-2101(D) appeal would lie because party could never have "final" judgment).

¶17    Thus, the general rule remains that "jurisdiction of appeals is limited to final judgments which dispose of all claims and all parties." *Musa*, 130 Ariz. at 312, 636 P.2d at 90. Most procedural orders therefore do not fall within the narrow exception carved by § 12-2101(D). *See Rueda*, 94 Ariz. at 133, 382 P.2d at 240 (holding denial of a motion to set aside default "does [not] determine the action so as to prevent entry of judgment upon the default"); *Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 215 Ariz. 589, 594, ¶¶ 14-15, 161 P.3d 1253, 1258 (App. 2007) (rejecting argument that contract clause requiring alternative dispute resolution but preventing appeal of such procedure to a "court of law" "in effect determines the action"); *Yaeger v. Vance*, 20 Ariz. App. 399, 400, 513 P.2d 688, 689 (1973) (holding that an order granting mistrial "neither 'determines the action' nor 'prevents judgment from which an appeal might be taken.'").

10

¶18      In 1972, however, this Court held that § 12-2101(D) applied to a denial of a class certification. *Reader v. Magma-Superior Copper Co.*, 108 Ariz. 186, 187, 494 P.2d 708, 709 (1972).     The Court reasoned that absent class action certification, the plaintiff's claim "[would] . . . never be adjudicated."  *Id.* at 188, 494 P.2d at 710 (quoting *Eisen*, 370 F.2d at 120).   Second, it reasoned that if an appeal did not lie, "no appellate court will be given the chance to decide if this class action was proper."  *Id.*

¶19      Referring approvingly to federal death knell cases, the opinion explained that when a plaintiff asserted nominal damages, the cost of going forward absent class certification would itself prevent judgment and satisfy § 12-2101(D).  *Id.* at 187-88, 494 P.2d at 709-10 ("[N]o lawyer of competence is going to undertake [a] complex and costly case to recover [nominal damages]") (quoting *Eisen*, 370 F.2d at 120).   Thus, *Reader* interpreted § 12-2101(D) in a manner consistent with the federal death knell doctrine, concluding that whether an order denying class certification would be subject to appeal would turn on whether the named plaintiff could financially proceed with the

suit.  108 Ariz. at 187-88, 494 P.2d at 709-10.[3]

¶20     The court of appeals later recognized that an appeal of a class certification denial was not appropriate under § 12-2101(D) when "appellants proceeded in their individual capacities to a final resolution of [the] litigation." *Markiewicz v. Salt River Valley Water Users' Ass'n*, 118 Ariz. 329, 341, 576 P.2d 517, 529 (App. 1978).  In such cases, the court held, the order denying class certification "becomes merged into the final judgment," and can be reviewed on appeal of that judgment.  *Id.*  *Markiewicz* distinguished *Reader* by concluding that in cases like the one before it, denial of class certification "did not 'in effect' determine the action, nor did it prevent 'judgment from which an appeal might be taken' . . . ."  *Id.* (quoting A.R.S. § 12-2101(D)).  "To hold otherwise[,]" the court explained, "would force cautious litigants to appeal every class action order, even if they were prepared to remain in the litigation, for fear that the time for appeal may have started to run from the entry of the class action order."  *Id.*  The court further noted that orders denying certification are "merely interlocutory" as "[a]n order under

---

[3]     The Court subsequently concluded that the trial court correctly denied class certification because the class at issue was unmanageably large and plaintiffs had failed to quantify their damages.  *Reader v. Magma-Superior Copper Co.*, 110 Ariz. 115, 116-17, 515 P.2d 860, 861-62 (1973).

12

[Rule 23(c)(1)] may be conditional, and may be altered or amended before the decision on the merits." *Id*. at 340 & n.10, 576 P.2d at 528 & n.10 (quoting Rule 23(c)(1)).

¶21 In *Eaton*, the court of appeals also refused to find § 12-2101(D) appellate jurisdiction over an order allowing an action to be maintained as a class action, reasoning that such determinations were conditional, and, in any event, did not determine the case as a whole. *Eaton*, 122 Ariz. at 392 & n.2, 393, 595 P.2d at 184 & n.2, 185 (citing Rule 23(c)(1)).[4] The court did, however, observe that such orders could be subject to the court of appeals' review "on a discretionary basis pursuant to [the court's] special action jurisdiction." *Id*. at 394, 595 P.2d at 186.

C

¶22 In light of *Markiewicz*, the other cases interpreting A.R.S. § 12-2101(D), *see* ¶¶ 15-17, *supra*, and the Supreme Court's interment of the death knell doctrine, we conclude that *Reader* should be overruled.

¶23 First, *Reader* is subject to the same criticisms that led the Court in *Coopers* to reject the death knell rule. The

---

[4] The court noted that *Coopers* did not "necessarily conflict" with *Reader* because the decision "treated the order [denying class certification] as an interlocutory order made appealable under . . . A.R.S. § 12-2101(D)," while federal law lacked a "similar provision." *Id.* at 393 n.3, 595 P.2d at 185 n.3.

opinion requires appellate courts to engage in a case-specific factual analysis before determining whether appellate jurisdiction exists for class certification denials, creating numerous complications, including the need to establish a court record on the issue. *See Coopers*, 437 U.S. at 473-74 (noting that requiring trial court record and appellate review to determine whether jurisdiction should be taken constitutes a "potential waste of judicial resources [that is] plain"). Second, under existing Arizona law, class action defendants are denied the right to appeal orders granting certification under § 12-2101(D). *Id*. at 476 ("Whatever similarities or differences there are between plaintiffs and defendants in this context involve questions of policy for Congress."). Third, there is no principled reason why the death knell doctrine should be limited to class actions, and expansion of the doctrine to other orders that make further individual litigation economically unattractive to a plaintiff would fundamentally undermine the final judgment rule. *Id*. at 469, 476 (explaining that "allowing appeals of right from nonfinal orders that turn on the facts of a particular case thrusts appellate courts indiscriminately into the trial process and thus defeats one vital purpose of the final-judgment rule - that of maintaining the appropriate relationship between the respective courts") (internal quotation marks omitted). The final judgment rule, "in the absence of

14

most compelling reasons to the contrary, is very much worth preserving." *Id*. at 476.

**¶24** *Coopers*' emphasis on the compelling nature of the finality rule corresponds with our determination that finality is the rule, subject only to certain narrow exceptions. *See Rueda*, 94 Ariz. at 132-33, 382 P.2d at 239-40; *Boehringer,* 16 Ariz. at 51, 141 P. at 127. This approach is consistent with the language of § 12-2101(D), while *Reader* is not. Unlike an order dismissing a complaint without prejudice after the statute of limitations has run, an order denying class certification does not, as a legal matter, "in effect determine[] the action and prevent[] judgment from which an appeal [may] be taken." *See* A.R.S. § 12-2101(D); *see also Markiewicz*, 118 Ariz. at 340 & n.10, 576 P.2d at 528 & n.10 (noting that class certification orders are "merely interlocutory" under the terms of Rule 23). To be sure, such an order may discourage a plaintiff from pursuing his individual claim, but the same can be said for a number of interlocutory orders, including rulings on motions for summary judgment or to compel discovery.

**¶25** Further, although there is no support for an automatic appeal of right from the denial of class certification, recent court of appeals decisions apparently assume that such a right exists by failing to undertake a *Reader* analysis. *See Garza*, 1 CA-CV 07-0472, slip op. at *2, ¶ 10; *see also ESI Ergonomic*

*Solutions, L.L.C. v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 97, ¶ 10, 50 P.3d 844, 847 (App. 2002). Such decisions underscore that the appellate courts are poorly positioned to carry out the kind of inquiry *Reader* requires.

**¶26** "[E]ven those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." *See Galloway v. Vanderpool*, 205 Ariz. 252, 256, ¶ 16, 69 P.3d 23, 27 (2003) (quoting *Walker v. Walker*, 178 S.E.2d 46, 46 (Ga. Ct. App. 1970)). We are not, however, "'prisoners of the past,' particularly when the language of the statute at issue 'does not compel the interpretation reached in previous cases.'" *Town of Gilbert Prosecutor's Office v. Downie (Matykiewicz)*, 218 Ariz. 466, 473, ¶ 34, 189 P.3d 393, 400 (2008) (Hurwitz, J., concurring) (*quoting Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 107, 859 P.2d 724, 730 (1993)). Our decision in *Reader* was inconsistent with the language of § 12-2101(D) and rested in part on federal decisions applying the now-discredited death knell doctrine. Stare decisis does not compel a different result.[5]

---

[5]    In this case, Garza apparently participated in arbitration until the court of appeals' stay. Thus, the denial of certification did not end the action. The contract also provides for a mandatory award of the prevailing party's attorneys' fees, a factor some courts cited in finding the absence of a death knell. *See, e.g.*, *West*, 558 F.2d at 981.

**D**

¶27      The absence of appellate jurisdiction under § 12-2101(D) does not mean, however, that orders granting or denying class certification are entirely immune from interlocutory scrutiny.   Arizona's special action rules provide a suitable means, in an extraordinary case, of permitting the court of appeals to address the issues raised by a trial court's class certification order.   *See* Ariz. R.P. Spec. Act. 1(a) (noting that special action is appropriate when there is no "equally plain, speedy, and adequate remedy by appeal"); Ariz. R.P. Spec. Act. 3, State Bar Committee Note (explaining that in "extraordinary situations" when "the remedy by appeal . . . is not 'equally' plain, speedy, or adequate" the court "has the power to review . . . whether 'essential justice has been done'").   Furthermore, the special action procedure will avoid the anomaly created by *Reader* and subsequent cases, under which orders denying class certification may be reviewed on appeal, but orders granting certification may not.

¶28      Moreover, in cases in which the court of appeals decides to exercise discretionary special action jurisdiction, the standard of review of a trial court's determination of class certification is not materially different from that of a direct appeal.   *Compare Godbey v. Roosevelt Sch. Dist. No. 66 of Maricopa County*, 131 Ariz. 13, 16, 638 P.2d 235, 238 (App. 1981)

(stating that trial court's class action order is reviewed for abuse of discretion), *with* Ariz. R.P. Spec. Act. 3(c) (providing for review of whether judge abused his or her discretion). We therefore conclude that the special action procedure is the appropriate vehicle to challenge a trial court's grant or denial of class certification.

**IV**

**¶29** For the foregoing reasons, we vacate the court of appeals' memorandum decision, and remand to the superior court for further proceedings.[6]


_____
                    Michael D. Ryan, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____

[6] Garza is not precluded from re-urging class certification and the appropriate party may seek special action relief from the ruling on such a request; we do not express any view on whether such extraordinary relief would be appropriate.

_____
W. Scott Bales, Justice


_____
Ruth V. McGregor, Justice (Retired)