IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LEONEL GARZA, and all persons similarly situated,
*Petitioners*,

*v.*

THE HONORABLE J. RICHARD GAMA,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of MARICOPA,
*Respondent Judge*,

SWIFT TRANSPORTATION CO., INC.,
*Real Party in Interest*.

No. 1 CA-SA 15-0315
FILED 7-12-2016

Petition for Special Action from the Superior Court in Maricopa County
No. CV2004-001777
The Honorable J. Richard Gama, Judge, Retired

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Hagens, Berman, Sobol, Shapiro, LLP, Phoenix
By Robert B. Carey, Leonard W. Aragon, Michella A. Kras
*Counsel for Petitioners*

Polsinelli, PC, Phoenix
By Rebecca Lumley
*Counsel for Real Party in Interest*

Polsinelli, PC, Kansas City, MO
By James C. Sullivan, Travis Salmon
*Counsel for Real Party in Interest*

---

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

J O H N S E N, Judge:

**¶1**        Petitioners challenge the superior court's order decertifying an 80,000-member class of drivers suing Swift Transportation Co., Inc.  For the reasons stated below, we accept jurisdiction of the petition for special action and grant relief.  On this record, Swift has failed to show that its various affirmative defenses render the class unmanageable; we also hold that Arizona law applies to the drivers' claim for breach of the duty of good faith and fair dealing.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Petitioner Leonel Garza was a Swift truck driver who sued the company in 2005, alleging it systematically underpaid all of its drivers. The superior court denied Garza's subsequent motion for class certification.  This court reversed and remanded, but on review, our supreme court vacated our decision, holding we lacked jurisdiction over the interlocutory denial of a motion to certify a class.  *Garza v. Swift Transp. Co., Inc.*, 222 Ariz. 281 (2009).  On remand, the superior court certified a class of Swift drivers pursuant to Arizona Rule of Civil Procedure 23(b)(3).  As trial approached, however, the superior court granted Swift's motion to decertify the class in July 2015.

2

**DISCUSSION**

**A.     Jurisdiction.**

¶3          Petitioner Garza and the drivers who were members of the now-decertified class lack an adequate remedy on appeal. *See Garza*, 222 Ariz. at 287, ¶ 27 (special action was suitable means to seek review of order denying class certification). *Cf.* Ariz. Rev. Stat. § 12-1873(A) (2016) (creating appellate jurisdiction over orders certifying or refusing to certify class actions in cases filed after September 13, 2013). In addition, Garza's petition raises questions of statewide importance. *See Perry v. Ronan*, 225 Ariz. 49, 52, ¶ 6 (App. 2010). For these reasons, we accept jurisdiction of the petition for special action.

**B.    De-Certification of the Class.**

   **1.        Reconsideration of certification.**

¶4          Whether to certify a class is a matter within the discretion of the superior court. *Godbey v. Roosevelt Sch. Dist. No. 66 of Maricopa County*, 131 Ariz. 13, 16 (App. 1981). In granting Swift's motion to decertify, the superior court concluded that the drivers' good-faith claim "is unmanageable as a class action." It held that, even assuming the claim presents common questions, Swift's affirmative defenses "raise individual issues" that would predominate over the common questions. Moreover, the court held, petitioners had not shown that Swift's choice-of-law arguments did not present "insuperable obstacles" to class-action treatment.

¶5          Petitioners argue that, having certified the class, the superior court lacked discretion to revisit the issue as trial neared. They argue that absent changed circumstances, a change in the law, the need to correct a clear error of law, or evidence that was unavailable earlier, the court should not reconsider a grant of class certification.

¶6          Arizona Rule of Civil Procedure 23(c)(1) provides that a class certification order may be "altered or amended before the decision on the merits." The class in this case was certified under Rule 23(b)(3) (common questions of law or fact predominate over individual questions such that class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy"). As Rule 23(c) anticipates, when the nature of the claims has evolved, the superior court has discretion to revisit whether, considering the elements of the claims and the proof required to prove those claims and any relevant affirmative defenses,

common questions of law or fact continue to predominate over individual questions. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Marlo v. United Parcel Serv.*, 251 F.R.D. 476, 479-80 (C.D. Cal. 2008) ("[A] district court reevaluating the basis for certification may consider its previous substantive rulings in the context of the history of the case, and may 'consider the nature and range of proof necessary to establish the [class-wide] allegations.'") (citation omitted); *see also ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 98 n.2, ¶ 11 (App. 2002) (cases construing federal rule of civil procedure may be authoritative in interpreting similar state rule).

¶7            When the superior court certified the class in this case, the complaint contained claims for breach of a standard form contract and breach of the implied covenant of good faith and fair dealing.  The premise of the claims was that Swift systematically paid its drivers for fewer miles than they actually drove. *Garza*, 222 Ariz. at 282, ¶ 3.  A claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment. *See, e.g.*, *Lennon v. First Nat'l Bank of Ariz.*, 21 Ariz. App. 306 (1974) (class treatment of claim arising out of standard bank charges).  In a ruling not now before us, however, the superior court dismissed petitioners' claim for breach of contract.  With trial approaching on petitioners' remaining claim for breach of the covenant of good faith and fair dealing, the superior court did not abuse its discretion when it decided to reconsider whether common questions continued to predominate and whether the case, now with some 80,000 class members, continued to be manageable.

### 2.     The remaining claim.

¶8            When Swift offers a trip to a driver, it sends a digital message informing the driver of the route and a mileage total for which the driver will be paid; the driver accepts the offer by pressing "y" in response to the inquiry. *Garza*, 222 Ariz. at 282, ¶ 2.  Swift pays a fixed rate per mile, and to calculate the miles for which it will pay, it uses third-party software called the Household Goods Mileage Guide ("HHG").  In dismissing petitioners' claim for breach of contract, the superior court held that Swift's contracts only required Swift to pay a driver for the number of miles stated in the digital message, and that a driver could not claim breach based on Swift's failure to pay for any additional miles a trip actually may require.

¶9            Consistent with the superior court's earlier ruling dismissing petitioners' claim for breach of contract, the evidence now in the record is

that Swift's drivers knew and agreed that they would be paid based on mileage derived from HHG, that the mileage they would actually drive would be greater than the HHG-derived mileage, and that, as a consequence, they would be paid for fewer miles than they drove. Swift cites evidence that drivers were informed and understood that a trip might require them to drive five to ten percent more miles than the HHG-derived mileage for which they are paid.

¶10 Petitioners' remaining claim alleges breach of the duty of good faith and fair dealing implied as a matter of law in Swift's contractual relationships with its employee-drivers and owner/operator-drivers. As explained in their petition for special action, petitioners allege HHG allows Swift more than one method of estimating the distance to a particular destination. They allege that in determining how much to pay a driver for a trip, Swift uses an HHG method that is not the most accurate means of estimating the distance the driver actually will drive.[1] Petitioners allege Swift breached its duty of good faith and fair dealing (1) by failing to select the HHG alternative that most accurately estimates actual trip distance and (2) by failing to inform drivers of that fact. They argue, "[T]elling a driver that the HHG does not equate to actual mileage does not show that Swift adequately and accurately explained to drivers how the HHG worked." That HHG-calculated mileage is less than actual miles driven is one thing, petitioners contend; it is another that Swift "selected the least favorable HHG payment option – city/state pairs – but did not tell the drivers" it had done so.

¶11 Implied in every contract is a duty of good faith and fair dealing that "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pens. Tr. Fund*, 201 Ariz. 474, 490, ¶ 59 (2002). A party may breach the covenant of good faith and fair dealing without breaching an express term of the contract. *Id.* at 491, ¶ 64 (breach of good faith when one party injures the other by "manipulat[ing] bargaining power to its own advantage[.]"). As alleged here, that principle means that although Swift's contracts may not have required it to pay drivers for any more miles than HHG specified, Swift may have breached its duty of good faith

---

[1] According to petitioners, although Swift uses HHG's "city/state pair option," HHG also offers other (allegedly more precise) means of calculating distances, including by zip code, nearest intersection, and latitude/longitude.

and fair dealing if it deliberately manipulated HHG to have it short the mileage the software calculated for purposes of payment.

¶12          It is apparent, therefore, that petitioners' claim for breach of the duty of good faith and fair dealing raises an issue common to all the members of the class: Given that the class members agreed to be paid based not on actual miles but on HHG-derived miles, did Swift have a duty implied by law to select a program within HHG that would derive mileages that most closely approximated actual miles?  Put differently, assuming petitioners agreed that they would be paid based on whatever HHG calculated, if Swift could choose between two (or three) options within HHG, did Swift have a duty to the drivers to select the option that was most advantageous to them?[2]

### 3.      Manageability: Affirmative defenses.

¶13          By itself, the presence of a single common question does not require a case be treated as a class action.  Under Rule 23(b)(3) the common question must "predominate over any questions affecting only individual members[.]"  It also must be shown that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Ariz. R. Civ. P. 23(b)(3).  Related to "fair and efficient adjudication" is the manageability of the case as a class action.  *See* Ariz. R. Civ. P. 23(b)(3)(D) ("the difficulties likely to be encountered in the management of a class action").

¶14          Denial of class action status based on manageability concerns is disfavored.  *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004) (manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class"); *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 727 (N.J. 2007).  The first manageability concern the superior court identified in decertifying the class arises from Swift's due-process right to a fair trial on any affirmative defenses it might raise to the class members'

---

[2]          We express no opinion on the merits of petitioners' claim. Although class-certification issues "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret't Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (citation omitted).

claims. Swift argues that individual questions relating to the good-faith claim predominate because of affirmative defenses it is entitled to raise that necessarily are specific to each individual member of the class. In ordering the class decertified, the superior court found these affirmative defenses would raise individual issues such that they would "predominate over the common question and answer."

¶15 As Swift explains, all of its affirmative defenses (limitations, waiver, laches) are based on when the respective class members came to know of facts that would give rise to their claim. Under other circumstances, the date on which each member of a large class became aware of the facts on which his or her claim is based could create individual questions that might make a class action unmanageable. But the record here contains no evidence that any class member knew what petitioners allege constituted Swift's breach of the duty of good faith: That, within HHG, Swift could have chosen a more accurate means of deriving the mileage for which it would pay drivers but did not do so. Indeed, as petitioners point out, there is plenty of evidence that trainers and others in Swift management, who presumably would have informed drivers of how HHG worked, did not themselves understand the facts that petitioners cite as the basis for their claim for breach of the duty of good faith. Swift cites substantial evidence that it told its drivers, or that the drivers otherwise knew, that they would be paid for fewer miles than they actually drove. It cites no evidence, however, that it told any of its drivers that, as petitioners allege, it could have used an option within HHG to derive more accurate mileage totals, but chose not to do so.

### 4.   Manageability: Choice of law.

¶16 The superior court held that choice-of-law issues presented another manageability issue compelling decertification. The court concluded, "With regard to Swift's choice of law defense, Garza has not met his burden to show 'that class certification does not present insuperable obstacles.'" We review *de novo* the superior court's determination concerning the appropriate choice of law. *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 354, ¶ 6 (2013). Arizona courts generally look to the Restatement (Second) of Conflict of Laws (1971) ("Restatement") to determine which state's substantive law applies to a claim. *Burr v. Renewal Guar. Corp.*, 105 Ariz. 549, 550 (1970).

¶17 Swift has standard form contracts with roughly 1,000 owner/operators that contain a provision requiring application of Arizona law to disputes arising under those contracts. Swift does not dispute that

Arizona law governs those drivers' claims for breach of the duty of good faith and fair dealing. The choice-of-law issue is with Swift's roughly 80,000 employee drivers, with whom Swift has no written contract. Swift hires and manages its employee drivers from terminals located in 26 states, including Arizona. But the company's corporate headquarters is in Arizona, and it manages all of its payroll operations from within this state. Although Arizona recognizes a duty of good faith implied by law in every contract, Swift argues (and petitioners do not dispute) that at least 15 of the 26 states in which it has terminals either do not recognize a duty of good faith implied in an employment relationship or do not permit a claim for breach of the duty of good faith to be brought as an independent cause of action. Without pausing to analyze each of those states' laws on the question, we will assume for purposes of this analysis that Arizona's good-faith law actually conflicts with that in one or more of the other states.

¶18 When, as here, no statute or contract directs application of a particular state's law, the Restatement requires the court to consider various interests, including (as relevant here) "relevant policies of the forum," "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," "the protection of justified expectations," and "certainty, predictability and uniformity of result." Restatement § 6(2). More specifically, in a contract claim such as this, when the parties have not selected a particular state law to govern their contract, the court should apply the local law of the state with the most significant relationship to the transaction and the parties. Restatement § 188(1); *see Taylor v. Sec. Nat'l Bank*, 20 Ariz. App. 504, 507 (1973).

¶19 Focusing on contract actions, Restatement § 188(2) instructs that the interest analysis to be pursued under Restatement § 6 should take into account the following:

> (a) the place of contracting,

> (b) the place of negotiation of the contract,

> (c) the place of performance,

> (d) the location of the subject matter of the contract, and

> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

¶20　　　In the case of a contract for services, such as the employment relationships at issue here, Restatement § 196 provides the analysis. *See* Restatement § 196 ("Contracts for the Rendition of Services"); *id.* cmt. a (§ 196 applies, *inter alia*, to "contracts with servants, independent contractors and agents"); *see also* Restatement § 188(2)(c), (3). Under Restatement § 196, unless another state has a more significant interest under § 6, the applicable law will be that of the state where the contract requires the services to be performed.

¶21　　　Significantly for purposes of this case, however, the force of the "place of performance" factor in a contract for services is limited to situations in which "the major portion of the services called for by the contract is to be rendered in a single state and it is possible to identify this state at the time the contract is made." Restatement § 196 cmt. a.[3] That is not the situation with Swift's employee-drivers: By their nature, the services they perform are not restricted to any one state; drivers' work takes them across the country. As applicable here, the states through which Swift drivers pass lack a significant interest in the nature of those drivers' relationships with Swift; by the same token, a driver's temporary presence in any particular state is unlikely to create in that driver any reasonable expectations about applicable common-law duties of good faith and fair dealing arising out of contract. *See* Restatement § 6(2)(c) (respective interests of other states in determination of issue).

¶22　　　On the other hand, however, as relevant to the claim at issue, the acts by Swift that are at the center of petitioners' good-faith claim all were performed in Arizona, not in the many states through which its

---

[3]　　　The comment continues:

> For this reason, the rule of this Section is unlikely to aid in the determination of the law governing contracts for employment aboard a ship sailing the high seas or to serve as a traveling salesman in two or more states. The same is true when the work called for by the contract can be done in any one of two or more states.

> Restatement § 196 cmt. a.

employees drive. Regardless of the terminal out of which drivers work or where their trips take them, it was in Arizona that Swift allegedly decided to use the particular option within HHG of which petitioners complain and it is within Arizona that Swift prepares all of its drivers' payroll documents and issues their checks. Under these circumstances, the desire for certainty, predictability and uniformity of result favors application of Arizona law to the way in which Swift calculates what it will pay its drivers. *See* Restatement § 6(2)(f).

¶23 The hub-and-spoke relationship between Swift's corporate policies and payroll functions in Arizona and the other states in which its drivers live and through which they drive is similar to circumstances the Texas court of appeals addressed in *Farmers Insurance Exchange v. Leonard*, 125 S.W.3d 55 (Tex. App. 2003). In that case, insurance agents in 29 states brought a class action over a bonus system their employer implemented from its corporate headquarters in California. Over the employer's objections, the Texas court held California had the most significant interest in the matter because that was the location of the acts on which the class claims were based. "While each agent's home state has a great interest in having its law applied to disputes arising within its borders, the only actions in dispute here occurred in California." *Id.* at 62. Where the insurance agents lived and worked was not material:

> The relevant performance for the purposes of this dispute is that of Farmers. . . . In the context of these bonus contracts, the actions of the agents in selling and maintaining various insurance products merely provides the measuring stick that Farmers uses in performing its obligations under the contract. Thus, the relevant place of performance of these bonus award contracts was California.

*Id.* at 63-64.

¶24 As in *Farmers*, application of Arizona law serves the policies and interests of Arizona as the forum of the action and the state in which Swift chose to establish its business headquarters. *See* Restatement § 6(2)(b). Arizona has a strong interest in enforcing the duty of good faith and fair dealing that our supreme court has held is implied by law in every employment contract. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385 (1985); *see Wells Fargo*, 201 Ariz. at 490, ¶ 59 (duty prevents one party from acting to deprive the other of "the benefits and entitlements of the agreement"). It would not serve that public policy if an employer based in Arizona owed that duty to some of its employees but

not to others. *See* Restatement § 6(2)(b). By the same token, given the transitory nature of the drivers' worksites and the fact that Swift's payroll functions are performed solely from within Arizona, to the extent they thought about it, the parties were more likely to expect that Arizona law, not the laws of the many other states, would apply to how Swift calculated what it would pay its drivers. *See* Restatement § 6(2)(d) (protection of justified expectations); *Farmers*, 125 S.W.3d at 62 (reasonable to assume that parties thought that state in which bonuses were determined and from which bonuses were paid would control).

¶25        Swift argues its due-process rights require application of the laws of the states in which its drivers live (or in which Swift's terminals are located). The Due Process Clause, however, imposes only "modest restrictions on the application of forum law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). In *Phillips*, upon which Swift relies, the Supreme Court held the Kansas court erred by applying that state's contract law and equitable principles to a class action of 28,000 oil lessors even though 99 percent of the leases and 97 percent of the plaintiffs had no connection to that state. *Phillips*, 472 U.S. at 814-15. No similar constitutional impediments prevent application of the law of Arizona, where Swift has its corporate headquarters and administers its payroll system, to its drivers' claim for breach of the duty of good faith and fair dealing based on how Swift pays them.

## CONCLUSION

**¶26**       For the reasons stated above, we accept jurisdiction and grant relief by reversing the order decertifying the class.



Ruth A. Willingham · Clerk of the Court
FILED: AA