NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LEONEL GARZA, *Plaintiff/Appellant,*

*v.*

SWIFT TRANSPORTATION COMPANY INC, *Defendant/Appellee.*

No. 1 CA-CV 20-0389
FILED 10-7-2021

---

Appeal from the Superior Court in Maricopa County
No. CV 2004-001777
No. CV 2004-005924
(Consolidated)
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

---

COUNSEL

Hagens Berman Sobol Shapiro LLP, Phoenix, AZ
By Robert B. Carey (argued), Leonard W. Aragon, Michella A. Kras
*Counsel for Plaintiff/Appellant*

Fisher & Phillips LLP, Kansas City, MO
By James C. Sullivan (argued)
*Co-Counsel for Defendant/Appellee*

Fisher & Phillips LLP, Phoenix, AZ
By Shayna H. Balch, Alanna R. Brook
*Co-Counsel for Defendant/Appellee*

Dentons US LLP, Phoenix, AZ
By Karl M. Tilleman, Erin N. Bass, Doug Janicik
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**         In this class action, Leonel Garza appeals from the superior court's rulings (1) granting summary judgment on the class's sole remaining claim for breach of the covenant of good faith and fair dealing; (2) decertifying the class; and (3) finding the limitations period for certain class members was not tolled during a prior appeal in this case. We affirm the summary judgment and therefore do not reach the other two issues.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**         In 2004, Scott Piron, a truck driver employed by Swift Transportation Company Inc., filed a class action complaint against Swift, alleging it uniformly paid drivers materially less than the actual miles driven. Piron's complaint was consolidated with another class action complaint filed by Garza, Daniel Yingling, Dennis Jensen, and Dennis Aitken. Garza and Yingling were owner-operators who had contracted with Swift, and Jensen and Aitken were Swift employees.

**¶3**         In 2006, Garza moved to certify a nationwide class of owner-operators, alleging Swift had consistently underpaid drivers by not paying "dispatch miles" for each trip. Garza alleged the underpayments stemmed from Swift's use of the Rand McNally Household Mover's Guide, sometimes referred to by the parties as the Household Goods Mileage Guide ("HHG"), to calculate miles and reimbursement. The Household Goods Carriers' Bureau Committee developed the HHG rules to "establish a uniform method of computing mileages," representing "the shortest distance between two points suitable for truck travel." Under the HHG, mileages generally "are computed over those authorized highways which result in the shortest distance between any two points and in accordance with any other rules of [the HHG] that may apply," and "[m]ileages

between cities or towns are computed from or to a centrally located point within such city or town."

¶4     The superior court denied Garza's class certification motion. Garza appealed that ruling, and we reversed. *Garza v. Swift Transp. Co., Inc.*, 1 CA-CV 07-0472, 2008 WL 3009961 (Ariz. App. July 31, 2008) (mem. decision) ("*Garza I*"). We held that the superior court could determine on a class-wide basis "(1) whether [Swift's] payment method, as applied to this class, was undertaken in good faith, and (2) whether Swift exhibited good faith in failing to explain to the class exactly how the payment method worked." *Id*. at *5, ¶ 24.

¶5     Our supreme court vacated *Garza I* on jurisdictional grounds without addressing the merits of Garza's motion. *Garza v. Swift Transp. Co., Inc.*, 222 Ariz. 281 (2009) ("*Garza II*"). On remand, the superior court certified a class of drivers employed by or contracted with Swift on or after January 30, 1998, and compensated by mileage. It later granted summary judgment on the owner-operators' breach of contract claim. It also separately ruled that the applicable limitation period for the remaining claims was not tolled while *Garza I* and *Garza II* were pending.

¶6     Several years later, the court decertified the class, finding that the remaining good faith and fair dealing claim was unsuitable for class action treatment. But the court stayed the proceedings to allow Garza to seek special action relief. In that special action, we reversed the decertification order. *Garza v. Gama*, 240 Ariz. 373 (App. 2016) ("*Garza III*"). Citing Garza's allegation that the HHG offers a more precise means of calculating distances than the city and state pairings used by Swift, "including by zip code, nearest intersection, and latitude/longitude," we concluded as follows:

> [A]lthough Swift's contracts may not have required it to pay drivers for any more miles than HHG specified, Swift may have breached its duty of good faith and fair dealing if it deliberately manipulated HHG to have it short the mileage the software calculated for purposes of payment.
>
> It is apparent, therefore, that petitioners' claim for breach of the duty of good faith and fair dealing raises an issue common to all the members of the class: Given that the class members agreed to be paid based not on actual miles but on HHG-derived miles, did Swift have a duty implied by law to select a program within HHG that would derive mileages that most

closely approximated actual miles? Put differently, assuming petitioners agreed that they would be paid based on whatever HHG calculated, if Swift could choose between two (or three) options within HHG, did Swift have a duty to the drivers to select the option that was most advantageous to them?

*Id.* at 377, ¶¶ 10–12 & n.1. On this basis, we reversed the superior court's order denying class certification. *Id.* at 380, ¶ 26.

**¶7** On remand, Garza offered two liability theories: (1) an "Endpoint Theory," under which Garza contended Swift "could have selected origin and destination endpoints that more accurately reflected the location where a driver was starting or ending his or her trip"; and (2) a "Route Theory," under which Garza contended Swift could have used other location points to more closely approximate actual miles driven rather than use the "short route" to determine HHG miles for pay.

**¶8** Swift objected to the Route Theory on disclosure grounds. As a result, the court set an evidentiary hearing to address that issue and "whether routing is or is not an option available" within the HHG. After hearing expert testimony from both sides, the court ruled "there is an option under the HHG that could support the Route Theory," citing Garza's expert, Dr. Lance Kaufman. Thus, the court allowed Garza to proceed on the Endpoint and Route Theories but expressly left open "whether or not Swift should have utilized the mechanism used by Kaufman," whether Kaufman's methodology "is used in the industry," and whether "it was feasible or practical to utilize that methodology."

**¶9** Eventually, Swift moved for summary judgment. It presented evidence that its transportation management system operated through "Innovative Enterprise Software" and MileMaker software, the latter of which could implement the HHG rules. Swift also presented evidence that Innovative was "programmed to use only city/state pairs as location points, including for the purpose of determining HHG mileage through its interface with MileMaker." Swift thus argued that Kaufman's analysis, in which he calculated mileages under Garza's Endpoint and Route Theories, was not compatible with Innovative and MileMaker. Swift also contended Kaufman did not consider whether his analysis would be compatible with Innovative.

**¶10** Swift, then, asserted four grounds for granting summary judgment: (1) the Endpoint and Route Theories "are not options within HHG"; (2) Swift acted reasonably by using third-party software according

to the publisher's specifications to determine HHG mileage; (3) Garza had no reasonable expectation that Swift could implement the options proffered by Kaufman; and (4) Garza could not prove damages.

¶11　　Swift also separately moved to decertify the class, contending (1) individualized issues predominated over common issues; (2) damages were not capable of class-wide calculation; (3) Garza no longer was a typical plaintiff; and (4) Garza could not show that Swift could have used a different option within the HHG.

¶12　　The superior court granted summary judgment to Swift. It rejected Garza's contention that Swift had manipulated the data to generate shorter mileages. Instead, the court found that Garza failed to present evidence showing Swift did anything beyond "simply input information into MileMaker and utilize[] the mileage data generated by the computer program." The court also found nothing in the record supported the "notion that there was . . . an available 'option' that Swift failed to 'select,'" and that Kaufman's methodologies "were not . . . existing options within the HHG that Swift could have and should have used."

¶13　　The court decertified the class, ruling "the fundamental inquiry [on the good faith and fair dealing claim] will be whether Swift failed to meet the drivers' reasonable expectations," which "would necessarily entail individualized inquiries into each class member's experience, background and reasonable expectations." It held that Garza could not apply the Route Theory on a class-wide basis because "some drivers fully understood they would not be paid based on the routes driven" and reasonable expectations only could be decided by determining "what each class member was specifically told and how they interpreted what they were told about how they would be paid."

¶14　　Moreover, because the court found Kaufman's calculations were not "available option[s]" within the HHG, the court reasoned that

> the operative question now is whether Swift had an obligation
> to create a complicated system for paying drivers that
> mimicked Swift's fuel routes that its computer system at the
> time was not even capable of handling . . . . This is hardly a
> simple question that necessarily results in a uniform answer.
> If there was in fact an accessible, available system that Swift
> decided not to use that would have resulted in higher
> mileages, then it is easy to imagine that the answer to whether
> Swift's failure to choose such a system uniformly violated the

expectations of the drivers. It is dramatically different, however, to consider whether or not the failure to adopt a complicated and expensive new system violated expectations.

The court concluded that damages were not uniform across the class because the Route Theory posited that "drivers should have been paid based on 'routes given to drivers'" but "owner-operator drivers were not required to drive the routes given to them by Swift." The court determined that Garza, the only remaining class representative at that time, did not have a claim typical to the class because he only drove for Swift for about three months and "admitted that, as an owner-operator, he . . . was able to drive any route he desired."

¶15　　　　Garza moved for reconsideration of the summary judgment and decertification rulings, raising three liability theories: the Endpoint Theory, the Route Theory, and a "Disclosure Theory" under which he argued Swift "violated the covenant [of good faith and fair dealing] by not accurately explaining to drivers how pay is calculated." The court denied these motions, again concluding Garza had presented "no evidence . . . that there were other HHG sanctioned 'options' that Swift could have simply selected that would have led to higher driver pay."

¶16　　　　Garza appealed. We have jurisdiction under A.R.S. §§ 12-2101(A)(1) and -1873(A).

## DISCUSSION

### A.　　The Superior Court Did Not Err by Granting Summary Judgment on the Good Faith and Fair Dealing Claim.

¶17　　　　In reviewing a grant of summary judgment, we review *de novo* whether any genuine issues of material fact exist and whether the superior court correctly applied the law. *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 13 (App. 2017). "[W]e view the facts in the light most favorable to the party against whom judgment was granted." *Id*. Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990).

¶18　　　　All contracts in Arizona include an implied covenant of good faith and fair dealing that "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of

the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 490, ¶ 59 (2002). A party may breach the covenant if it injures the other party to a contract by "manipulat[ing] bargaining power to its own advantage." *Id.* at 491, ¶ 64.

### 1. Garza Did Not Show Swift Could Have Calculated HHG-Compliant Miles in a Manner More Favorable to Drivers.

**¶19** Garza contends genuine issues of material fact remain over whether the implied covenant of good faith and fair dealing required Swift "to derive HHG miles for the Swift Provided Route that 'most closely approximated actual miles.'"

**¶20** The relevant driver contracts "require[] Swift to pay 'dispatch miles'" and Garza argues there is record evidence to show "*dispatch miles* means mileage for the route the driver is going to take."[1] But the superior court interpreted the phrase "dispatched miles" in its 2012 summary judgment ruling on the breach of contract claim, concluding "the reasonable interpretation of 'dispatched miles' means the mileage stated in the preplan message given to the owner-operator driver offered the trip." The court also determined "[a] dispatched mile is a mile as defined by the dispatcher," and "[i]t is common knowledge in the trucking industry that [the HHG] is used to calculate 'dispatched miles.'" Garza did not appeal that ruling. For that reason, it is the law of this case that dispatched miles are calculated using the HHG, and Garza cannot now argue otherwise. *See Dancing Sunshines Lounge*, 149 Ariz. 480, 482 (1986) ("[T]he decision of a court in a case is the law of that case on the issues decided throughout all subsequent proceedings in both the trial and appellate courts, provided the facts, issues and evidence are substantially the same as those upon which

---

[1] Swift contends this argument is beyond our *Garza III* mandate, contending we "specifically defined the issues on remand to be whether (i) Swift deliberately manipulated HHG to have it short mileage for purposes of driver pay, and (ii) Swift could have chosen other options within HHG that would have been more advantageous to its drivers." *See Garza III*, 240 Ariz. at 377, ¶¶ 11–12; *see also In re Marriage of Molloy*, 181 Ariz. 146, 149 (App. 1994) ("On remand, a superior court must strictly follow the mandate of an appellate decision.") (internal quotation marks omitted). But Garza's argument could fall within the second issue in *Garza III* if it could be shown that more closely approximating actual miles was a selectable option within the HHG.

the first decision rested."). Thus, Garza's good faith and fair dealing claim turns on whether Swift, by promising to pay HHG dispatched miles, manipulated its superior bargaining power by selecting HHG options that did not accurately reflect the location where drivers started or ended their trips and did not track the fuel routes sent to drivers.

**¶21**　　　　For Garza to succeed on this argument, he must show the HHG rules allowed Swift to choose more than one method of calculating HHG miles. He has not done so. There is no record evidence showing the Endpoint Theory or the Route Theory complied with the HHG.

**¶22**　　　　Garza's experts did not testify that either theory is HHG-compliant. Dr. Lance Kaufman expressed no opinion on whether the mileages he calculated using either theory complied with the HHG. He also did not know whether his calculation methods followed industry custom or practice in determining HHG miles. Garza even contended at one point in the litigation that Kaufman's role was to show how MileMaker functions, and his work "ha[d] nothing to do with what Swift should or must do to meet its contract obligations." At oral argument before the superior court, Garza conceded Kaufman is "not an expert on HHG. He is an expert on MileMaker."

**¶23**　　　　Likewise, Garza retained Steven Keil "to review Swift's computing systems and software" and "assess[] whether alternate payment methods based on the Swift-Provided Route could have been implemented by Swift to pay drivers." He, too, did not know whether Kaufman's methodologies produced HHG-compliant miles. And Michael Barr, who Garza retained to analyze the MileMaker software, could only opine the software "allow[ed] more precision and more accuracy" via practical routes. Again, he did not opine whether MileMaker's practical routes would be HHG-compliant.

**¶24**　　　　Garza contends the superior court improperly weighed the experts' testimonies in granting summary judgment. *See State v. Pandeli*, 242 Ariz. 175, 192–93, ¶¶ 74–76 (2017) (A disagreement among expert witnesses "goes to the weight and credibility" of the expert opinions, "matters reserved for the fact-finder's consideration and determination."). But a party can present expert conclusions to defeat a motion for summary judgment. *Mohave Elec. Coop., Inc. v. Byers*, 189 Ariz. 292, 304 (App. 1997). And, this case does not involve a "good faith disagreement[] among credible experts," as neither Kaufman nor Keil expressed any opinions about whether the Endpoint Theory or the Route Theory complied with the HHG. Instead, they opined on various software and their capabilities. And

although they testified MileMaker is capable of outputting HHG mileages, a particular mileage is only an HHG-compliant mileage if its calculation complies with the "well-defined rules and methodology" outlined in the HHG. By expressing no opinion whether either theory complied with the HHG rules, Garza's experts failed to create a genuine issue of material fact as to whether Swift could have chosen another method to calculate HHG miles.

¶25        For the same reason, we also reject Garza's contention that fact questions remain as to whether Kaufman's methodologies represented available "HHG options to use more accurate endpoints that will calculate more accurate HHG miles." *See Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 209, ¶ 12 (App. 1999) ("To succeed on a motion for summary judgment, the [movant] need only demonstrate an absence of evidence for an essential element of the complaint.").

### 2.        We Do Not Consider Evidence Presented for the First Time on Reconsideration.

¶26        Garza challenges the superior court's conclusions that (1) Kaufman improperly used latitude and longitude and intersections in creating routes; (2) the Route Theory is not an option within the HHG; and (3) Garza did not present evidence other trucking companies paid drivers similarly. He largely relies on the evidence presented with his motion for reconsideration, including an affidavit from Kaufman, to contend "MileMaker . . . allows users to enter latitude/longitude coordinates and intersections when calculating HHG miles."

¶27        Our review, however, is limited to the evidence when the superior court considered Swift's summary judgment motion. *Grande v. Jennings*, 229 Ariz. 584, 587, ¶ 9 (App. 2012). Additionally, an order denying reconsideration is not appealable. *State v. Limon*, 229 Ariz. 22, 23, ¶ 5 (App. 2011). We, therefore, decline to address the evidence Garza offered for the first time on reconsideration. In any event, the MileMaker User Guide proffered by Garza states that while junctions or latitude and longitude points can be used to generate "practical routes," they are not valid to calculate HHG miles.

¶28        Garza contends the superior court "erroneously predetermined a battle of conflicting expert opinions," arguing the expert testimony, and specifically Kaufman's testimony, "focused on whether HHG allowed Swift other methods for calculating driver pay." But as discussed, neither Kaufman nor Keil opined whether Kaufman's

calculations complied with the HHG, and Keil offered no opinion whether Swift could have reasonably implemented Kaufman's methodologies.

### 3. Whether Garza Raised the Route Theory Before *Garza III* Is Irrelevant to the Summary Judgment Ruling.

**¶29** Garza also challenges the superior court's finding that he did not present the Route Theory to this court in *Garza III*. Yet the court correctly noted Garza conceded this point at oral argument on the summary judgment motion. Still, the court allowed Garza to proceed on both the Endpoint and Route Theories, rendering the issue irrelevant.

### 4. The Superior Court Did Not Grant Summary Judgment Based on an Impracticability Defense.

**¶30** Garza contends that Swift did not timely disclose its impracticability defense, which he says hinged on its use of Innovative to calculate HHG miles, arguing it was not disclosed until June 2019. The record shows, however, that Garza was or should have been aware of this issue as early as November 2017 when he requested an extension based in part on Swift's argument that

> the MileMaker software is limited by how that program interfaces with Swift's operating system, Innovative Software. Plaintiff has never heard of Innovative Software, nor has Swift ever disclosed or otherwise claimed that it could not or was not using the MileMaker features of its software because of an interface limitation.

The superior court also identified these issues as outstanding as of April 2018: (1) "whether changing or modifying Swift's computer system or environment to accommodate [the Route Theory] would have been impractical or infeasible (the 'impracticability defense')"; (2) "[w]hether the 'impracticability defense' would be a question for the jury"; and (3) "[w]hether Swift timely disclosed the 'impracticability defense.'" The superior court did not rule on these issues until September 2018, determining that Swift could "pursue the theory that there is no practical 'routing function' in either" version of the MileMaker software. Even so, those rulings came more than a year before Swift moved for summary judgment.

**¶31** Additionally, Kaufman's 2019 expert reports disclosed new, relevant information about Swift's impracticability defense. In his July 15, 2019 expert report, Kaufman contended Swift could have used latitude and

longitude points to calculate mileages and disclosed he had developed "a third-party software that integrates with MileMaker and streamlines this process" along with another of Garza's experts. Kaufman produced a second report on August 27, 2019, in which he modified his earlier methodology to instead "calculate[] Unpaid Miles using the closest non-coordinate MileMaker location," contending "[c]ity-state locations, truck stop locations, and intersection locations . . . can be used as alternatives to coordinates when calculating Unpaid Miles." Given the timing of these reports, Garza cannot now complain Swift did not timely disclose its impracticability defense.

### 5. Garza Bore the Burden to Present Evidence Swift Breached the Covenant of Good Faith and Fair Dealing.

¶32　　Garza also contends Swift bore the burden to prove it would have been impracticable to use the Endpoint Theory or the Route Theory in its HHG mileage calculation process. The superior court ruled, and we agree, Garza bore "the burden of proving that Swift had a duty and breached that duty by failing to select an option more advantageous to the drivers" and thus the burden "to show, at a minimum, that Swift could have reasonably implemented Kaufman's methods." Indeed, it was Garza's burden to present evidence Swift had deprived the class of the benefit of their contracts via, for example, "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance." Restatement (Second) of Contracts § 205 cmt. d (1981). Because Garza offered no evidence to show the Endpoint Theory or Route Theory is HHG-compliant or existed before this litigation, he failed to show Swift acted in bad faith by not implementing these theories. *Cf. Carter v. Safeway Stores, Inc.*, 154 Ariz. 546, 549 (App. 1987) (affirming judgment for defendant where plaintiffs could not show any "reasonable probability" that the covenant was breached).

¶33　　For these reasons, we conclude the superior court did not err by granting summary judgment to Swift. As no class claims remain for trial, we need not reach Garza's challenge to the class decertification order or his contention that the applicable limitations period should have been tolled while *Garza I* and *Garza II* were pending.

### B. Attorney's Fees and Costs on Appeal

¶34　　Swift requests its attorney's fees incurred in this appeal under A.R.S. § 12-341.01(A). Swift is the successful party on appeal, and the good

faith and fair dealing claim arises out of contract. *See Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 201 (App. 1994) ("Arizona courts have consistently found the successful party eligible for an award of attorneys' fees" in appeals based on a breach of the implied covenant of good faith and fair dealing.). We, therefore, award Swift reasonable attorney's fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶35        We affirm the grant of summary judgment.



AMY M. WOOD • Clerk of the Court
FILED:     AA