IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHARLENE OLEWIN, *Plaintiff/Appellant*,

*v.*

NOBEL MANUFACTURING, LLC, *Defendant/Appellee*.

No. 1 CA-CV 20-0706
FILED 1-5-2023

Appeal from the Superior Court in Maricopa County
No.  CV2018-002204
The Honorable M. Scott McCoy, Judge

**REVERSED AND REMANDED**

COUNSEL

Law Office of Timothy M. Collier PLLC, Scottsdale
By Timothy M. Collier
*Counsel for Plaintiff/Appellant*

Guidant Law PLC, Tempe
By Gary M. Smith
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1 Plaintiff Charlene Olewin appeals from the superior court's order and related judgment setting aside a Default Judgment she obtained against defendant Nobel Manufacturing, LLC ("Nobel") after she moved to reopen the case following the court's earlier dismissal for lack of prosecution. We reject Nobel's arguments that (1) the motion was void for lack of service, and (2) Olewin's claims had already been adjudicated on the merits under Arizona Rule of Civil Procedure ("Rule") 41(a), which governs voluntary dismissals by a plaintiff. We therefore reverse the court's order and related judgment, and we remand for reinstatement of the Default Judgment.

**BACKGROUND**

¶2 Olewin and Mark Stapels, who were in a relationship with each other, jointly owned Nobel, formed in 2015. A year after their personal relationship ended, they signed a redemption agreement in which Nobel agreed to buy Olewin's 50% interest in the company for $160,000. Because the company's assets were sold in 2017 and she had not been paid, Olewin sued Nobel and Stapels for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and fraud; she separately alleged alter ego liability as to Stapels. Nobel did not respond to the complaint, but Stapels filed an answer.

¶3 In April 2018, Olewin filed an application and affidavit for entry of default against both defendants. Because Nobel failed to respond or answer within 10 days, entry of default became effective. *See* Ariz. R. Civ. P. 55(a)(4), (5). Olewin, however, took no further steps to obtain a default judgment against Nobel and the case was placed on the dismissal calendar. *See* Ariz. R. Civ. P. 38.1(d). In February 2019, the superior court dismissed the case without prejudice for lack of prosecution.

¶4 Because Stapels, the manager and sole member of Nobel, allegedly had assets in other states, in January 2019 Olewin sued Nobel and

Stapels in New York state court.[1]  Several weeks later, local counsel for Olewin filed a "stipulation of discontinuance," *see* N.Y. C.P.L.R. 3217 (McKinney 2012), stating that the action "is hereby discontinued without prejudice."  In October 2019, Olewin sued Nobel and Stapels in Michigan state court.  In January 2020, local counsel for Olewin filed a notice of dismissal without prejudice.

¶5          Shortly thereafter Olewin moved to reopen the Arizona lawsuit, citing Rules 60(b) and 55(a)(4), and asking the court to allow her to complete her previous filings, including finalizing the default judgment process against Nobel.  Nobel did not respond, and for "[g]ood cause" the superior court granted the motion to reopen.  Olewin moved for entry of default judgment and attached a statement of taxable costs, a sum certain affidavit, and an application for attorneys' fees.  Olewin then moved to clarify that she was only seeking a default judgment against Nobel.  Nobel does not dispute that Olewin mailed the motion to reopen and each of these subsequent filings to Nobel's statutory agent and Stapels' attorney.  The court later entered the Default Judgment against Nobel for $160,000, plus attorneys' fees and costs.

¶6          When Olewin sought a debtor's examination, Nobel moved to set aside the Default Judgment under Rule 60(b)(1), (3)–(6).  Nobel argued that Olewin (1) tried to "sneak past" service by mailing it instead of "serving it by process server" on Nobel, (2) concealed and misrepresented her "serial filings and dismissals," (3) used fraud and surprise to obtain the Default Judgment, and (4) presented no authority justifying the relief she requested and received.  Nobel also argued the Default Judgment was void under Rule 41(a) because the New York dismissal was "automatically on the merits and with prejudice."

¶7          Olewin countered that Rule 41(a) did not bar her claims and that she properly served her motion to reopen.  She added that Nobel was "well aware" of her filings and it "made the conscious strategic decision not to respond."  Olewin argued that accepting Nobel's claim of lack of notice would require believing that its statutory agent had failed to send multiple filings to Stapels, the sole member of Nobel, and that Stapels' personal

---

[1]     The plaintiff in the New York lawsuit was "DebtHub," to whom Olewin had apparently assigned her claim.  For ease of reference, and because the parties do not suggest that assignment of the claim affects our legal analysis, we treat the New York lawsuit as being filed by Olewin.

attorney "who appeared at the default hearing in this matter" also failed to send Stapels those filings. In its reply, Nobel repeatedly stated it was not served but did not counter Olewin's assertion that Stapels' personal attorney was present at the default hearing.

¶8 The superior court vacated the Default Judgment, declaring it void under Rule 41. The court did not address whether Nobel had been properly served. In its subsequent judgment, the court explained that Olewin's "multiple voluntary dismissals prior to her return to this Court served as an absolute jurisdictional bar." The court also awarded attorneys' fees and costs to Nobel. Olewin timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶9 Olewin argues the superior court erred in setting aside the Default Judgment. Nobel defends the court's ruling on two grounds: service was insufficient and Rule 41(a) barred Olewin's motion to reopen. Generally, we review the superior court's ruling on a motion to set aside a default judgment for an abuse of discretion and view the facts in the light most favorable to upholding that decision. *Ezell v. Quon*, 224 Ariz. 532, 534, 536, ¶¶ 2, 15 (App. 2010). We review de novo, however, whether a default judgment is void. *Id.* at 536, ¶ 15; *Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018) (holding that whether service was proper is a legal question of personal jurisdiction).

¶10 We also review de novo the interpretation of rules. *In re $11,660.00 U.S. Currency*, 251 Ariz. 106, 108, ¶ 8 (App. 2021). We interpret the language of a rule in view of the entire text, considering the context and related provisions. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019); *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7 (2007) (stating that courts apply the same principles in interpreting statutes and rules). If the text is unambiguous, we apply it as written without using other methods of statutory interpretation. *State v. Jurden*, 239 Ariz. 526, 530, ¶ 15 (2016).

### A. Service of Process

¶11 Generally, a party seeking to set aside a default judgment under Rule 60(b) must show (1) it acted promptly in seeking relief, (2) its failure to file a timely answer was excusable by one of the reasons listed in Rule 60(b), and (3) it had a meritorious defense. *Daou v. Harris*, 139 Ariz. 353, 358–59 (1984). But if a default judgment is void, a court may set it aside without these showings. *Darnell v. Denton*, 137 Ariz. 204, 206 (App. 1983).

¶12 Nobel argues the Default Judgment was void because Olewin did not properly serve notice of her motion to reopen. "[A] judgment is void if it was entered without jurisdiction because of a lack of proper service." *Ruffino*, 245 Ariz. at 168, ¶ 10 (citation omitted). Olewin correctly notes that the superior court did not address whether service was improper. But Nobel presented this argument in its motion to set aside, and we will affirm "if the judgment can be sustained on any theory framed by the pleadings and supported by the evidence[.]" *Gen. Elec. Cap. Corp. v. Osterkamp*, 172 Ariz. 191, 193 (App. 1992).

¶13 Rule 5 governs service of documents filed after a party has been served with a summons and complaint. *See* Ariz. R. Civ. P. 5(a)(1). The precise service requirements vary depending on the specific circumstances, including the status of the litigation. Generally, as explained in Rule 5(a)(2) a filing made *after* service of the original complaint must be served on each party "by a method stated in Rule 5(c)." As stated in Rule 5(c)(2), a "document is served under this rule by any of the following: . . . (C) mailing it by U.S. mail to the person's last-known address—in which event service is complete upon mailing." A limited liability company "may be served with any process, notice or demand required or permitted by law by serving its statutory agent." A.R.S. § 29-3119(A). And the agent has the duty to forward to the company any pertinent "process, notice or demand . . . that is served on or received by the agent." A.R.S. § 29-3115(C)(1). Nobel does not dispute that Olewin mailed the motion to reopen and her related filings to Nobel's statutory agent.

¶14 Nobel argues service by mail was insufficient, relying on Rule 5(c)(4), titled "Service After Judgment:"

> *After the time for appeal from a judgment has expired* or a judgment has become final after appeal, a motion, petition, complaint, or other pleading requesting modification, vacation, or enforcement of that judgment must be served in the same manner that a summons and pleading are served under Rule 4, 4.1, or 4.2, as applicable.

(Emphasis added.) Within the context of our civil procedure rules, a judgment "includes a decree and any order from which an appeal lies." Ariz. R. Civ. P. 54(a).

¶15 In its motion to set aside, Nobel asserted that "merely mailing" the motion to reopen was improper, citing Rule 5(c)(4). The

critical issue as to method of service, then, is whether the superior court's dismissal for lack of prosecution was an *appealable* judgment. *See* Ariz. R. Civ. P. 5(c)(4) (describing the service requirements when the time for appeal has expired or the judgment has become final after appeal). If Nobel's position is correct, then Olewin was required to serve her motion to reopen in the same manner as service of a summons and complaint, instead of mailing it. *See* Ariz. R. Civ. P. 4.1(i).

¶16        "This court's appellate jurisdiction is defined, and limited, by the Legislature." *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426, ¶ 4 (App. 2016). A dismissal for lack of prosecution is a dismissal without prejudice. *See* Ariz. R. Civ. P. 38.1(d)(2). Generally, an order dismissing a case without prejudice is neither final nor appealable because "the plaintiff can refile the action and therefore 'ha[s] nothing to appeal.'" *Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 600, ¶ 7 (App. 2016) (citation omitted). However, at least one exception to that principle exists, as recognized by our supreme court long ago. *See State v. Boehringer*, 16 Ariz. 48, 51 (1914) (stating that an order dismissing a case *without prejudice* is not a final determination on the merits but that an appeal may be pursued "under [the 1913 Civil Code], when such order in effect determines the action and prevents final judgment from which an appeal might be taken").[2]

¶17        That exception remains a part of Arizona law today, unchanged. *See Garza v. Swift Transp. Co., Inc.*, 222 Ariz. 281, 284, ¶ 15 (2009) (noting the "exception to the final judgment rule codified at A.R.S. § 12-2101[(A)(3)] has existed in Arizona without material change since statehood"). The *Garza* court explained that "[t]he classic example" of an appealable order falling under § 12-2101(A)(3) is a dismissal without prejudice after the statute of limitations has run, and relief under a savings statute is not available. *Id.* The court added that under "the general rule," appellate jurisdiction "is limited to final judgments which dispose of all claims and all parties[,]" and "[m]ost procedural orders therefore do not fall within the narrow exception carved by § 12-2101[(A)(3)]." *Id.* at ¶ 17.

¶18        Notwithstanding this longstanding interpretation of § 12-2101(A)(3), *Campbell v. Deddens*, 93 Ariz. 247, 250 (1963), includes a sentence that conflicts with the principles recognized in *Boehringer* and *Garza*.

---

[2]        Because no material differences exist between the 1913 Civil Code provision cited in *Boehringer* and the current version, A.R.S. § 12-2101(A)(3), we cite the current version.

*Campbell* involved a petition for a *writ of mandamus*, where the petitioners argued the plaintiff's case should have been dismissed when it remained on the inactive calendar beyond the time periods stated under Rule V(d) of the later repealed Uniform Rules of Practice of the Superior Court (inactive calendar). *Campbell*, 93 Ariz. at 249.

¶19          The petitioners in *Campbell* argued the trial court had no discretion to retain the case on the inactive calendar after the time limits had expired unless the rule's provisions were strictly followed. *Id.* Our supreme court disagreed, reasoning in part that the rule was not self-executing because all judgments must be in writing and signed. *Id.* at 250. Judgments, the court explained, include orders from which an appeal lies, and because "*an order dismissing a case for want of prosecution . . . 'determines the action and prevents judgment from which an appeal might be taken' it is an appealable order*, A.R.S. § 12-2101[(A)(3)]," and such an order must "be in writing." *Id.* at 250 (emphasis added). We conclude the court's statement indicating that such an order is appealable is nonbinding obiter dictum. *See Alejandro v. Harrison*, 223 Ariz. 21, 25, ¶ 12 (App. 2009) ("*Obitur dictum* is a statement of general law made by a court which is unnecessary to its decision and thus not precedential, but merely persuasive. . . . In contrast, judicial dictum is a statement the court expressly uses to guide parties in their future conduct.").

¶20          Why the *Campbell* opinion states that an order dismissing a case for lack of prosecution is an appealable order without addressing whether the action could be re-filed is not evident. The essential points of the opinion are that a dismissal from the inactive calendar does not happen automatically, and a trial court retains discretion to permit a case to be continued on the inactive calendar. *Campbell*, 93 Ariz. at 250–51. As the *Campbell* court explained, a case is not dismissed until a court issues an order, and because the trial court did not abuse its discretion by declining to enter a dismissal order, mandamus relief was not justified. *Id.* Nothing in the court's opinion suggests that the parties had argued or briefed whether a dismissal without prejudice for lack of prosecution is appealable, or whether resolution of that issue was essential to the analysis. *See Creach v. Angulo*, 186 Ariz. 548, 552 (App. 1996) ("Dictum is not binding precedent because, *inter alia*, it is without the force of adjudication and the court may not have been fully advised on the question."); *Judicial Dictum*, Black's Law Dictionary (11th ed. 2019) ("An opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight."). Nor does anything in the

opinion indicate that the court used the statement to guide parties in their future conduct. *See Campbell*, 93 Ariz. at 247; *Alejandro*, 223 Ariz. at 25, ¶ 12.

**¶21** Nonetheless, we carefully consider whether obiter dictum is persuasive, especially when it comes from our supreme court. Here, we cannot reconcile *Campbell's* statement on the appealability of a dismissal for lack of prosecution with the plain and ordinary meaning of A.R.S. § 12-2101(A)(3), or with the supreme court's declaration about that statute long before, and long after, *Campbell*. When a case is dismissed for lack of prosecution, the dismissal is without prejudice. *See* Ariz. R. Civ. P. 38.1(d)(2). The dismissal at that point in the litigation does not "determine[] the action" or "prevent[] judgment from which an appeal may be taken[,]" A.R.S. § 12-2101(A)(3), unless the action cannot be re-filed. *See Garza*, 222 Ariz. at 284, ¶ 15. Thus, *Campbell's* statement fails to align with decades of established law that a dismissal without prejudice is not appealable unless the statute of limitations bars the plaintiff's claims and no relief under a savings statute is available. *See id.*; *cf. Hernandez v. Yuma County*, 91 Ariz. 35, 36 (1962) ("Dictum is not binding precedent . . . and does not control subsequently where the issue is directly presented.").

**¶22** The superior court issued an order dismissing Olewin's case without prejudice for lack of prosecution. That order was not appealable unless Olewin was barred from re-filing. The record does not show, nor has either party suggested, that Olewin was precluded from re-filing her lawsuit. Thus, the Rule 38.1 dismissal was not an appealable order, which means Olewin could properly serve her motion to reopen by mailing it to Nobel's statutory agent. Nobel has failed to establish that service was insufficient.

### B.     Application of Rule 41(a)

**¶23** Nobel argues the superior court properly determined the Default Judgment was void under Rule 41(a). But Nobel cites no authority suggesting that a case that would have been barred by application of Rule 41(a) renders a default judgment void under Rule 60(b)(4). Nonetheless, because Nobel relied on other subsections of Rule 60 in pressing its Rule 41(a) arguments in the superior court, we address whether the court erred in concluding that Rule 41(a) barred Olewin's claims. *See* Ariz. R. Civ. P. 60(b)(3) ("fraud, . . . misrepresentation, or other misconduct of an opposing party") or (b)(6) ("any other reason justifying relief"); *Osterkamp*, 172 Ariz. at 193 (stating that an appellate court will affirm for any reason supported by the record).

¶24      Rule 41(a) states in relevant part:

(a) Voluntary Dismissal

(1) *By the Plaintiff.*

(A) *On Notice or Order on Stipulation.* Subject to Rules 23(e), 23.1(c), 23.2, 66(d), and any applicable statute, the plaintiff may dismiss an action:

> (i) by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

> (ii) by order based on a stipulation of dismissal signed by all parties who have appeared. The order may be signed by a judge, an authorized court commissioner, the clerk, or a deputy clerk.

(B) *Effect.* Unless the notice or order states otherwise, the dismissal is without prejudice. But *if the plaintiff previously dismissed an action in any court based on or including the same claim*, a notice of dismissal operates as an adjudication on the merits.

Ariz. R. Civ. P. 41(a) (emphasis added).

¶25      Rule 41(a)(1) allows a plaintiff to voluntarily dismiss an action as a matter of right and without a court order before the defendant serves an answer or motion for summary judgment. The first time, the dismissal is without prejudice. Ariz. R. Civ. P. 41(a)(1)(B). Generally, that type of dismissal is not an adjudication on the merits and thus does not trigger claim preclusion. *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 108, ¶ 13 (App. 2007). But if the plaintiff has previously dismissed an action that is based on the same claim, including a voluntary dismissal in any court, the dismissal operates as an "adjudication on the merits." *Id.* Commonly referred to as the "two-dismissal rule," it may enable a defendant to assert that a plaintiff's attempt at a third action is barred due to claim preclusion. *See Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 8, ¶ 21 (App. 2018); *Com. Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1076 (9th Cir. 1999) (explaining that whether a second dismissal is subject to the two-dismissal rule such that it operates as an adjudication on the merits can only be determined in a third action).

¶26      Neither party argues, and nothing in Rule 41(a) suggests, that the two-dismissal rule does not apply to parallel proceedings. A court determines the applicability of Rule 41(a) at the time a defendant asserts that the "plaintiff previously dismissed an action in any court based on the same claim," regardless of when each action was initiated. *See Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP*, 575 Fed. Appx. 216, 218 (5th Cir. 2014) (rejecting the argument that federal "Rule 41(a)(1)(B)'s two-dismissal rule should apply only to serial litigation (i.e., suits which are filed after the earlier suits were dismissed)"); *Axon Enter. Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 WL 317289, at *2 n.3 (D. Ariz. Jan. 5, 2018) (applying *Cabot* and rejecting similar argument). Thus, because of the motion to reopen, the case pending before us constitutes the "third action" in which Rule 41(a) can potentially be invoked, even though Olewin had initiated her lawsuit in Arizona before the New York and Michigan lawsuits.

¶27      Rule 41(a) establishes the terms governing when a plaintiff can dismiss a case and the legal effect such a dismissal may have on other cases. One apparent purpose of the rule is to assist parties in evaluating whether a particular dismissal order is an adjudication on the merits. Depending on that determination, the parties may then seek a ruling on whether previous dismissals trigger application of the two-dismissal rule, thereby supporting one of the grounds for dismissing a *third action* based on claim preclusion. *See Joyner v. Leaphart*, 875 S.E.2d 729, 735 (Ga. 2022) (explaining that a showing of entitlement to relief under the two-dismissal rule means a "defendant has satisfied just one of the three criteria of a res judicata defense—a previous adjudication on the merits by a court of competent jurisdiction").

¶28      When addressing issues of claim preclusion that involve cases in different jurisdictions, courts look to the law of the jurisdiction where a previous judgment was entered to determine its legal effect. *See Hancock v. O'Neil*, 253 Ariz. 509, 512, ¶ 11 (2022). But a party's request to invoke the two-dismissal rule under Rule 41(a) requires a narrower focus, given that the question is not whether claim preclusion applies, but if by operation of law a particular dismissal is an adjudication on the merits. *See W. Grp. Nurseries, Inc. v. Ergas*, 211 F. Supp. 2d 1362, 1368 (S.D. Fla. 2002) (noting that when the two-dismissal rule is applicable, it merely operates as an adjudication on the merits and claim preclusion is the doctrine that bars a subsequent suit on the same cause of action); *see also Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266, ¶ 10 (2022) ("For . . . claim preclusion to apply, there must be a final judgment on the merits."). By adopting Rule 41(a), our supreme court established specific criteria for

deciding whether prior dismissals from any court qualify as a case previously dismissed by the plaintiff. Thus, we examine the legal effect of each dismissal in this case under the rule's plain language.[3]

**¶29** Olewin's Arizona complaint, dismissed for failure to prosecute, was the first case dismissed. Because that dismissal was involuntary, it falls under Rule 41(b), which says that "[u]nless the dismissal order states otherwise, . . . [it] operates as an adjudication on the merits." The order dismissing for lack of prosecution stated that the dismissal was without prejudice, which means the order stated otherwise and thus carried no preclusive consequences. *See Airfreight Express Ltd.*, 215 Ariz. at 108, ¶ 13 (explaining that an involuntary dismissal order stating that it is without prejudice is not an adjudication on the merits and does not bar a second action under the doctrine of claim preclusion); *see also Banner Univ. Med. Ctr. Tucson Campus, LLC*, 252 Ariz. at 267, ¶ 12 ("Given that the trial court stated otherwise, the entry of summary judgment on behalf of [several defendants] is not an adjudication on the merits.").

**¶30** The second dismissal, or "discontinuance," occurred in New York. *See* N.Y. C.P.L.R. 3217 (McKinney 2012) (stating that a "party asserting a claim may discontinue it without an order . . . by serving upon all parties to the action a notice of discontinuance" or by filing "a stipulation in writing signed by the attorneys of record for all parties"). The "stipulation of discontinuance" stated that it was without prejudice. Under Rule 41(a), Nobel has not shown that the New York "stipulation" qualifies as a dismissal by the plaintiff. The rule describes two ways in which a "plaintiff may dismiss an action": (1) filing a timely notice of dismissal or (2) obtaining a court order based on a stipulation. Ariz. R. Civ. P. 41(a)(1)(A)(i) & (ii). The New York order does not fit under either category. It is not a notice of dismissal nor does the record reveal any court order. *See id.*

**¶31** Because Nobel failed to establish that Olewin had "previously dismissed an action" under Rule 41(a)(1)(B) when she filed a notice of

---

[3] Nobel does not argue that laws of New York and Michigan governing claim preclusion are pertinent in deciding whether the dismissals in those jurisdictions qualify as an adjudication on the merits based on Rule 41(a). Thus, Nobel's defense of the superior court's ruling rests on its assertion that Olewin's claims fall under Arizona's version of the two-dismissal rule.

voluntary dismissal in Michigan, Nobel has not shown that the Michigan dismissal operated as "an adjudication on the merits." Applying the plain language of Rule 41(a), the Michigan dismissal was the first and only case dismissed by Olewin in this litigation; therefore, the superior court erred in granting Nobel's Rule 60(b) motion.

## CONCLUSION

**¶32** We vacate the superior court's order setting aside the Default Judgment and the related judgment awarding attorneys' fees and costs. Thus, we remand for reinstatement of the Default Judgment. Nobel has not prevailed on appeal, so we deny its request for attorneys' fees. We decline to award attorneys' fees to Olewin given her lack of compliance with procedural requirements. *See Zambrano v. M & RC II LLC*, 254 Ariz. 53, 66, ¶ 49 (2022) (denying fee request for failure "to state the basis for the request" under ARCAP 21(a)(2)).



AMY M. WOOD • Clerk of the Court
FILED: AA